**In re Richard Alan BLUESTONE, Debtor.**

**L.B. CLEVELAND, INC., Plaintiff,**

v.

**Richard Alan BLUESTONE, Defendant.**

**Bankruptcy No. B88–02862.**
**Adv. No. B88–468.**

United States Bankruptcy Court,
N.D. Ohio, E.D.

June 13, 1989.

Curtis P. Stranathan, Cleveland, Ohio, for plaintiff.

Thomas C. Pavlik, Sindell, Rubenstein, Einbund, Pavlik, Novak & Celebrezze, Cleveland, Ohio, for defendant.

## MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

This matter is before the Court upon the Complaint of L.B. Cleveland (Cleveland), Creditor, objecting to discharge of the above-styled Debtor. A trial was held with due notice having been made upon all parties entitled thereto. After reviewing the testimony, admitted evidence, and the record of this matter, the following constitutes the Court's findings and conclusions pursuant to Rule 7052, Bankr.R.:

### I.

Richard Alan Bluestone (Debtor) filed a voluntary petition seeking relief under Chapter 7 on August 1, 1988. Cleveland then filed the instant complaint objecting to discharge pursuant to 11 U.S.C. § 727(a)(2), (a)(4), and § 548.

Cleveland is a creditor of Debtor by virtue of a contingent unliquidated claim for $3 Million based upon a complaint presently pending in the State Court. *See* consolidated Case Nos. 110248 and 124623, amended complaint filed October 15, 1987. Debtor's objection to this claim was overruled by this Court.

### II.

Cleveland bases its objection to discharge on two Code sections. First, it alleges that Debtor's transfer of the family home to his wife on or about June 9, 1988 was done with the intent to hinder, delay or defraud creditors within one year before the filing of the petition pursuant to §§ 548 and 727(a)(2) of the Bankruptcy Code. The Debtor contends that the transfer to his wife of his one-half interest in the real property was done as part of a partial property settlement agreement entered into between him and his wife on June 7, 1988, and was not done with any fraudulent purpose.

Second, Cleveland seeks to have the Debtor denied a discharge for failure to include certain assets in his schedules, pursuant to § 727(a)(4). Cleveland characterizes the transfer of at least $30,000.00 from the Debtor to his wife and her mother in 1985 as a transfer without consideration. Purportedly, the funds were used by the recipients to purchase 15% of the stock of Galvco, Inc., a corporation owned by Debtor's brother. Cleveland further contends that the Debtor claims that Defendant has a continuing interest in this stock, that it should have been listed in Debtor's schedules, and that Debtor's failure to include his interest in the stock was for the purpose and with the intent of hindering, delaying or defrauding creditors. Debtor states that the $30,000.00 payment was for

antecedent debts, for money that he had borrowed from his wife and mother-in-law. He denies any interest in the stock.

■ The Court can consider only the allegations raised under § 727(a)(2) and (a)(4) by Cleveland since Cleveland has no standing to seek avoidance of an alleged fraudulent transfer under § 548. An action to set aside a fraudulent transfer must be brought in the name of the bankruptcy estate as the real party in interest. *See In re Macloskey*, 66 F.Supp. 610, 612 (N.J. 1946); *In re Toledo Equipment Co., Inc.*, 35 B.R. 315, 317 (Bankr.N.D. Ohio 1983); *In re Curry & Sorensen, Inc.*, 57 B.R. 824, 828, 829, 14 B.C.D. 103 (9th Cir. BAP 1986). Consequently, the issues before the Court are whether Debtor's transfer of his home was done with the intent to hinder creditors and whether he made a false oath by failing to include assets of the estate on his petition.

### III.

Certain basic facts are stipulated or undisputed. Debtor and his wife were married on December 23, 1972. They purchased the marital residence at 5986 Ashcroft Drive, Mayfield Heights, Ohio, on October 4, 1974 in both their names. On January 29, 1982 Debtor conveyed his interest to his wife by quit claim deed. On March 19, 1985 his wife reconveyed one-half interest in said property to him. On June 9, 1988 Debtor reconveyed his interest back to his wife pursuant to a partial property settlement agreement entered into between him and his wife on June 7, 1988 in contemplation of an impending divorce. (*See* Plaintiff's Deposition Ex. 8). On July 12, 1988 a divorce action was filed between Debtor and his wife which became final in December, 1988. Two children were born of their marriage in 1979 and 1981 and are presently living with their mother in the marital home.

Debtor was employed by Cleveland from the age of 21 until he was terminated in April, 1985. His brother, Leonard Bluestone, incorporated Galvco, Inc. in April, 1985, and Debtor began working for Galvco

in 1985 after being unemployed for several months (Debtor, Cross–Exam).

Debtor transferred the following sums to his wife, Natalie Bluestone, and his mother-in-law, Gertrude Sherr:

| Check | Date | Payee | Amount |
|---|---|---|---|
| 183 | 7–16–85 | Natalie Bluestone | $10,000.00 |
| 185 | 7/28/85 | Natalie Bluestone | $10,000.00 |
| 187 | 7/31/85 | Gertrude Sherr | $10,000.00 |

(Plaintiff's Deposition, Ex. 13)

The share journal of Galvco reveals the following purchases of Galvco stock:

| | | |
|---|---|---|
| 7–18–85 | Natalie Bluestone | 20 Shares |
| 7–27–85 | Mathew Bluestone (son) | 20 Shares |
| 7–29–85 | Beth Bluestone (daughter) | 20 Shares |
| 8/5/85 | Gertrude Sherr | 20 Shares |

(*Id.*, Ex 10)

Debtor states that the sums transferred were for antecedent debts, for money that he had borrowed from his wife and mother-in-law. He was unable to specify the exact amounts he had borrowed but testified that the $30,000.00 repaid represented both money borrowed and potential earnings on those borrowings. (Debtor's deposition, October 6, 1988, p. 24). There was no written documentation of these debts. (*Id.*, pp. 18, 108). The source of the money used to repay these debts was banks, credit cards and personal lines of credit. (*Id.* pp. 25–26, 108–110).

### IV.

■ Section 727 of the Bankruptcy Code [11 U.S.C. § 727] addresses the issuance of a discharge under Chapter 7 proceedings. In pertinent part, § 727(a) provides:

§ 727. Discharge.

(a) The court shall grant the debtor a discharge, unless

... (2) the debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or

(B) property of the estate after the date of the filing of the petition;

In other respects, § 727 provides:

727(a) The court shall grant the debtor a discharge, unless

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

Debtor testified that he has lived with his mother on Mayfield Road since June of 1988 (Debtor, X–Exam.) yet his schedule of affairs filed July 29, 1988 states that he lives at the Ashcroft address (Statement of Financial Affairs # 1C). Debtor further testified that he continued to spend some nights at the Ashcroft address in the Fall of 1988 (Deposition, October 8, 1988, p. 28). Debtor failed to list the transfer of his one-half interest in the residence within one year prior to filing. (Statement of Financial Affairs, # 12b). No amendments were filed to these schedules, and Debtor testified that his schedule was correct. (Debtor, X–Ex.) Debtor's counsel attempted to explain that the transfer of property was contained in the divorce decree, which action was listed in the Statement of Affairs under # 10. The Court does not find this explanation convincing, first, because it ignores the plain language of # 12(b), and second, because the actual transfer of the property took place in June, 1988, prior to the domestic relations action commencing in July, 1988. Since the property had already been fully transferred and recorded prior to the filing of the divorce action, Debtor's reliance on *In re Washington*, 623 F.2d 1169 (6th Cir.1980) *cert. den. Wasserman v. Washington*, 449 U.S. 1101, 101 S.Ct. 896, 66 L.Ed.2d 826 (1981) is misplaced. Even though the judgment entry in the divorce action ordered the Debtor to quit-claim his interest in the Ashcroft property within five days, that order had no effect since the property had already been transferred. (*See* DX 1, DX 3).

## IV.

This adversary matter is a core proceeding pursuant to provisions of 28 U.S.C. § 157(b)(2)(J), with jurisdiction further conferred under 28 U.S.C. § 1334 and General Order No. 84 of this District.

Pursuant to Rule 4005, Bankr.R., the burden of proof in objecting to a discharge is upon the Plaintiff. That burden must be established by clear and convincing evidence. *In re Lineberry*, 55 B.R. 510, 511 (Bankr.W.D.Ky.1985); *In re Cohen*, 47 B.R. 871, 12 B.C.D. 1210 (Bankr.S. D.Fla.1985); *In re Mayo*, 94 B.R. 315, 18 B.C.D. 931 (Bankr.D.Vt.1988). While the ultimate burden of proof in a suit to bar a discharge under § 727 is on the plaintiff, the burden shifts to the debtor to make a credible explanation of his actions once the plaintiff has established a prima facie case. *In re Martin*, 698 F.2d 883, 887 (7th Cir. 1983). To discern whether the requirement of § 727(a)(2) and (4) have been sustained, the Court necessarily must consider the evidence and adduced testimony to determine whether the element of intent was sufficiently established under § 727(a)(2) as well as determining whether the debtor knowingly and fraudulently committed the proscribed acts, pursuant to § 727(a)(4).

Debtor contested the admission of testimony taken at a R.2004(a) deposition prior to the filing of this adversary proceeding. The Court finds that admission of such testimony is proper. *See Sampsell v. Anches*, 108 F.2d 945 (9th Cir., 1939) (Testimony taken pursuant to former section 44 of this Title was admissible as an admission of a party against interest, and it was immaterial whether defendant was able to testify or had testified in the action); *In re Bard*, 108 F. 208 (D.C.N.Y.1901) (the testimony of the bankrupt, so far as relevant, may be admitted in subsequent proceedings where the person who takes the notes of the bankrupt's examination testifies that they were truly and correctly taken); *see, also, U.S. v. Simon*, 146 F. 89 (D.C.Wash. 1906).

During the trial the Debtor testified that he has never had any interest in Galvco stock (Debtor, Direct Ex.). Yet in previous deposition testimony he admitted that he had $40,000.00 invested in Galvco stock. (Deposition, October 6, 1988, pp. 7–10).[1] This earlier sworn testimony was taken on

---

1. Cleveland notes $40,000.00 invested in Galvco, but Debtor's check register reveals $30,000.00

July 20 and July 27, 1987, in connection with the state court case still pending (*Id.* pp. 6–10).

█ While the testimony could not establish actual intent, because a debtor is unlikely to testify directly that his intent was fraudulent, the courts may deduce the requisite intent from all the facts and circumstances of the case. *In re Devers*, 759 F.2d 751, 754 (9th Cir.1985); *see also Farmers Co-operative Association v. Strunk*, 671 F.2d 391, 395 (10th Cir.1982); *In re Olivier*, 819 F.2d 550 (5th Cir.1987). Here, after consulting with a bankruptcy attorney, Debtor transferred his interest in the marital home to his wife less than two months before filing for bankruptcy. He borrowed money in 1985 from various sources in order to repay unsubstantiated amounts he determined he owed his wife and mother-in-law. These parties invested the moneys so transferred in the company owned by Debtor's brother a few days later. Incredibly, the testimony revealed that the Debtor's wife and mother-in-law invested their own money in Debtor's brother's new business at a time when the Debtor's marriage was disintegrating. (Deposition, October 6, 1988, p. 49).

█ Debtor's testimony that he had no interest in Galvco was incredible, especially in light of his prior deposition testimony from 1987 in which Debtor stated that the stock was in his family's name to keep it from his creditors. (*Id.* pp. 7–8). Debtor later repudiated that testimony but also stated that the stock was worthless. A recalcitrant Debtor may not escape a § 727(a)(4)(A) denial of discharge by asserting that the omitted or falsely stated information concerned a worthless business relationship or holding; such an attempt is specious. *Diorio v. Kreisler–Borg Construction Co.*, 407 F.2d 1330, 1331 (2nd Cir.1969). Creditors are entitled to judge for themselves what will benefit, and what will prejudice them. *Morris Plan Industrial Bank v. Finn*, 149 F.2d 591, 592 (2nd Cir.1945), quoted in *In re Chalik*, 748 F.2d 616, 618 (11th Cir.1984). Generally, the Debtor's testimony lacked credibility. Despite the inadequacy of this defense, failure

transferred per Plaintiff's Deposition Ex 13.

to list this stock does not rise to the level of fraudulent intent necessary to bar a discharge. Neither does it satisfy the requirements of § 727(a)(2) since, although the purchases may have been made with the intent to hinder a creditor, the property was not transferred within one year of the filing of the petition. It does, however, contribute to the pattern of evasiveness and reckless indifference to the truth that has been evidenced by this Debtor.

█ While Cleveland relied solely on Debtor's failure to list the Galvco stock as a basis for denial of discharge under § 727(a)(4), sufficient grounds exist for denial of discharge based upon nondisclosure of Debtor's transfer of his one-half interest in the marital residence less than two months prior to the filing of Debtor's petition. Because the Debtor swore to the truthfulness of his answer, an oath was effected. *See* Advisory Committee Note (1983) to Federal Rules of Bankruptcy Procedure Official Form # 1. The Debtor has perpetuated a false oath within the meaning of § 727(a)(4)(A). *See, e.g., In re Chalik, supra; In re Ingle*, 70 B.R. 979, 983 (Bankr.E.D.N.C.1987); *Williamson v. Fireman's Fund Ins. Co.*, 828 F.2d 249 (4th Cir.1987).

The Court next considers whether such false oath was made "knowingly and fraudulently." The following quotation best exemplifies the standard of inquiry:

The primary purpose of § 727(a)(4)(A) of the Code, and its predecessor, § 14c(1) of the Bankruptcy Act, is to insure that dependable information is supplied for those interested in administration of the bankruptcy estate from which they can rely without a need for the trustee or other interested parties to dig out the true facts in examinations or investigations. The trustee and creditors are entitled to honest and accurate signposts on the trail showing what property has passed through the debtor's hands during the period prior to his bankruptcy. While a false statement in the schedules or statement of affairs due to mere mistake or inadvertence is not sufficient for a denial of discharge—fraudulent intent

is necessary to bar a discharge, the courts have held that a reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering may rise to the level of fraudulent intent necessary to bar a discharge. *In re Diodati*, 9 B.R. 804, 807–08 (Bankr.D. Mass.1981).

Applying this purpose and standard to the case at bar, Debtor knowingly and fraudulently omitted the real estate transfer to his wife from his Statement of Financial Affairs. No plausible explanation was given for this omission. Consequently, the Debtor fraudulently and knowingly made a false oath.

██ The materiality of this false oath must next be established. The subject matter of a false oath is material if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property. *In re Steiker*, 380 F.2d 765, 768 (3rd Cir. 1967); *accord In re Chalik, In re Tully*, 818 F.2d 106, 110 (1st Cir.1987); *In re Montgomery*, 86 B.R. 948, 956 (Bankr.N.D. Ind.1988). The Trustee and creditors are entitled to honest and accurate signposts on the trail showing what property has passed through the Debtor's hands during the period before bankruptcy. *In re Slocum*, 22 F.2d 282, 285 (2nd Cir.1927); *In re Mascolo*, 505 F.2d 274, 278 (1st Cir.1974). Here the Debtor failed to include the transfer of the marital residence on his Statement of Financial Affairs, despite the clear language requiring him to do so. For these reasons the Court finds that the Plaintiff has met its burden by clear and convincing evidence of establishing the elements of § 727(a)(4)(A).

Accordingly, the Debtor, Richard Alan Bluestone, is denied a discharge in bankruptcy due to his false oath in violation of 11 U.S.C. § 727(a)(4)(A).

IT IS SO ORDERED.