**In the Matter of Raymond F. DADDARIO, Jr., Debtor.**

**David BROWN, Trustee, Plaintiff,**

**v.**

**Raymond F. DADDARIO, III and Raymond F. Daddario, Jr., Defendants.**

**David BROWN, Trustee, Plaintiff,**

**v.**

**Raymond F. DADDARIO, Jr. and Laura E. Daddario, Defendants.**

**David BROWN, Trustee, Plaintiff,**

**v.**

**Lynne T. DADDARIO, Defendant.**

**Bankruptcy No. 2–90–01532.**
**Adv. Nos. 92–2042, 92–2043 and 92–2206.**

United States Bankruptcy Court,
D. Connecticut.

Sept. 15, 1992.

Thomas P. Malnati, Brown & Welsh, Meriden, Conn., for trustee-plaintiff.

Martin W. Hoffman, Hartford, Conn., for Raymond F. Daddario, III, Chatham Homes, Inc., Capital Group Inc., and Lynne T. Daddario.

Honor S. Heath, Attorney/Advisor, New Haven, Conn., U.S. Trustee's Office.

Joel M. Grafstein, Farmington, Conn., for debtor.

## RULING ON DISQUALIFICATION OF ATTORNEY

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

### ISSUE

The question here, raised by the court *sua sponte,*[1] is whether an attorney who had been the interim trustee of a chapter 7 estate for a period of nine months prior to being succeeded by a permanent trustee, may thereafter represent defendants and other adverse parties in fraudulent conveyance actions brought by that estate.

### II.

### BACKGROUND

On July 23, 1990, three creditors filed an involuntary chapter 7 petition against Raymond F. Daddario, Jr., the debtor. The court, on September 12, 1990, entered an order for relief. Martin W. Hoffman, Esq. (Hoffman) who was a member of the panel of private trustees established by the United States trustee, *see* Bankruptcy Code § 701, was appointed on September 13, 1990 to serve as interim trustee of the debtor's estate. Hoffman served as such interim trustee until June 10, 1991, when he was succeeded, after the creditors conducted an election, by the permanent trustee, David Brown, Esq. (Brown). The debtor, who has been represented at all times by Joel M. Grafstein, Esq. (Grafstein), did not file complete schedules until March 27, 1991, and the first meeting of creditors was thereafter set for May 16, 1991.

On January 11, 1991, Lynne T. Daddario (Lynne), the debtor's wife, filed a motion for relief from stay. An associate from Hoffman's law firm appeared at the hearing on behalf of the estate on the motion, but the motion was not pressed.

Brown, on December 2, 1991, filed a complaint objecting to the debtor's discharge, alleging, *inter alia,* the debtor transferred property "with intent to hinder, delay, or defraud a creditor...." *See* Code § 727(a)(2). The debtor failed to respond and the court entered a judgment denying the debtor his discharge on January 13, 1992.

On January 24, 1992, Brown filed a complaint against Raymond F. Daddario, III, the debtor's son, alleging that the debtor had transferred $165,000 to the son, for which the son was liable to the estate under fraudulent conveyance doctrine. Grafstein appeared in this action on behalf of the son. On May 19, 1992, Hoffman entered an appearance for the son in place of Grafstein. Brown, thereafter, sought to

---

1. Regardless of when or how raised, all federal courts have an inherent power to deal with admission and conduct of attorneys practicing before them. *See In re Corn Derivatives Anti-* *trust Litigation,* 748 F.2d 157, 160 (3rd Cir.1984), *cert. denied,* 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985).

depose the officers of two corporations—Chatham Homes, Inc. (Chatham) and Capital Group, Inc. (Capital)—allegedly affiliated with the debtor or members of his family. Hoffman appeared on behalf of both corporations and filed motions to quash the deposition subpoenas.

Brown, on January 24, 1992, also brought a complaint sounding in fraudulent conveyance against Laura Daddario, the debtor's mother. Hoffman similarly entered appearances in that proceeding on behalf of Chatham and Capital to quash subpoenas served on those corporations.

On May 27, 1992, Brown filed a third complaint against Lynne, alleging that the debtor had fraudulently transferred to her realty costing $70,000, a Viking Cabin Cruiser costing $543,255, cash in excess of $270,000 and a 1988 Cadillac Coupe DeVille. Hoffman entered an appearance for Lynne in the action, and when Brown sought to depose Chatham and Capital, Hoffman filed motions on their behalf to quash the deposition subpoenas.

At a hearing held on August 28, 1992 in all three adversary proceedings on the motions to quash the subpoenas served on Chatham and Capital, Hoffman's prior service as interim trustee in the case was brought to the court's attention. The court continued the hearing to September 4, 1992, to consider the matter of disqualification of Hoffman, and to receive the advice of the office of the United States trustee on the existence of any internal guidelines of that office concerning interim trustee disqualification when succeeded by a permanent trustee.

At that continued hearing, the office of the United States trustee advised that no internal guidelines had been promulgated for interim trustees on the issue. Hoffman then stated to the court that in light of the court having raised the issue of possible disqualification, he wished to withdraw his appearances, with his clients' approval, in all pending matters. The court, after approving Hoffman's request to withdraw his appearances,[2] placed on the record the view that interim trustees should normally be disqualified from appearing as attorneys in contested matters where they have previously served as interim trustees for a significant period of time. Since this question apparently has not been previously considered, the court's ruling is being issued in a written opinion.

## III.

## DISCUSSION

The court has concluded that the question of whether a former interim trustee in a bankruptcy case can represent parties in adverse matters thereafter brought by the bankruptcy estate, fairly falls within the doctrines of the Connecticut Rules of Professional Conduct which govern the conduct of lawyers. Although a bankruptcy trustee may not be acting as a lawyer for the estate, the trustee's relationship to the estate is reasonably analogous to an attorney's relationship with a client. Indeed, the role of a bankruptcy trustee in a case mandates an even stricter standard of conduct than that of a lawyer with a client. A bankruptcy trustee is the paradigmatic fiduciary while a lawyer has responsibilities only akin to those of a fiduciary. *See Emle Industries, Inc. v. Patentex, Inc.*, 478 F.2d 562, 575 (2nd Cir.1973), *citing Empire Linotype School, Inc. v. United States*, 143 F.Supp. 627, 633 (S.D.N.Y.1956) ("[T]he Code of Professional Responsibility ... 'set[s] up a high moral standard, akin to that applicable to a fiduciary.'").

Connecticut Rule of Professional Conduct 1.9(a) addresses the matter of an attorney representing another person against a former client. It provides:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation....

---

**2.** It should be noted that at no time has Hoffman's subjective good faith been in issue.

Rule 1.9(a) raises two main issues: (1) how is the former client's consent established, and (2) what is a substantially related matter?

*In re Corn Derivatives Antitrust Litigation,* 748 F.2d 157, 162 (3rd Cir.1984), *cert. denied,* 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985) holds that the burden of showing consent by a former client is on the attorney. In the present matter, while Brown has not filed a motion to disqualify Hoffman, neither can it be said that Brown has expressly consented to Hoffman's appearances in these matters. Brown, at the September 4, 1992 hearing, supported the court's *sua sponte* motion for disqualification. In any event, this instance may well be one where even if Brown had consented, such consent would not immunize Hoffman against a disqualification based upon the appearance of impropriety.

In dealing with the issue of a substantially related matter, the Second Circuit holds "that the relationship between issues in the prior and present cases [be] 'patently clear'." *Government of India v. Cook Industries, Inc.,* 569 F.2d 737, 739–740 (2nd Cir.1978). If a substantial relationship is found a conclusive presumption arises that confidential information has been given to the attorney. *Emle Industries, Inc.,* 478 F.2d at 571.

In light of a bankruptcy trustee's responsibilities to represent the debtor's estate, to investigate the financial affairs of the debtor and to recover property of the estate (including property allegedly fraudulently conveyed)—*see* Code §§ 323; 704(1) and (4); 541; 548—there is a patently clear relationship between Hoffman's responsibilities to the estate while trustee and the issues raised in the proceedings in which he represents adverse parties. The court determines that, based on Hoffman's nine-month tenure as trustee, a *per se* substantial relationship exists, and there is no need to inquire into the extent to which Hoffman did or did not perform his duties during his tenure. A conclusive presumption has arisen that he, as a former trustee, is in an inherently conflicting position, necessitating his withdrawal as attorney for parties

claimed against by the estate. *Cf. In re Russo,* 762 F.2d 239, 242 (2nd Cir.1985) (a former bankruptcy trustee who seeks to be a bidder at bankruptcy auction not barred *per se,* but factual inquiry needed to see if trustee possesses any confidential information).

Public policy considerations also require Hoffman's disqualification. In order to maintain confidence in the bankruptcy courts, the public's view must be that of a system free from the appearance of impropriety. *Cf. Emle Industries, Inc.,* 478 F.2d at 575 ("[The interests of the public] require [a] court to exercise its leadership to insure that nothing, not even the appearance of impropriety, is permitted to tarnish our judicial process. The stature of the profession and the courts, and the esteem in which they are held, are dependent upon the complete absence of even a semblance of improper conduct.") *Cf. also, Analytica, Inc. v. NPD Research, Inc.,* 708 F.2d 1263, 1269 (7th Cir.1983) ("While 'appearance of impropriety' as a principle of professional ethics invites and maybe has undergone uncritical expansion because of its vague and open-ended character, in this case it has meaning and weight. For a law firm to represent one client today, and the client's adversary tomorrow in a closely related matter, creates an unsavory appearance of conflict of interest that is difficult to dispel in the eyes of the lay public— or for that matter the bench and bar....").

In *In re Status Game Corp.,* 102 B.R. 19 (Bankr.D.Conn.1989), this court refused to approve a law firm as counsel for the debtor's estate because of the law firm's current representation of the debtor's principal secured lender. In denying the application, the requirement of an actual conflict between the proposed counsel's representation of the lender and the estate was rejected, the ruling being that the representation of the lender necessarily tainted the law firm "with the appearance of conflict." *Id.* at 22.

In the court's view a panel trustee serving for nine months as interim trustee of a chapter 7 estate who thereafter is permitted to represent parties adverse to the es-

tate would weaken public confidence in the federal bankruptcy system.

## IV.

### CONCLUSION

Hoffman, having served for nine months as an interim trustee of a chapter 7 estate, must be disqualified from representing parties in these actions brought by the estate seeking to recover property of the estate allegedly fraudulently transferred.  It is

SO ORDERED.