In re Richard William PERKEY, Laura Katherine Perkey, Debtors.

STURGEON STATE BANK, Plaintiff,

v.

Richard William PERKEY, Laura Katherine Perkey, and Rodney Perkey, Defendants.

Bankruptcy No. 95–20762–C.
Adv. No. 96–2001–C.

United States Bankruptcy Court,
W.D. Missouri.

April 15, 1996.

Gwendolyn S. Froeschner, Columbia, MO, for debtors.

John C. Reed, Trustee.

Craig A. Smith, for Sturgeon State Bank.

## MEMORANDUM ORDER

FRANK W. KOGER, Chief Judge.

This matter is before the Court on the Motion to Dismiss filed by the debtors, Richard and Laura Perkey, and the Motion For Leave to Intervene as Party Plaintiff filed by the Chapter 7 Trustee, John C. Reed.

### Facts

On October 25, 1995, Richard and Laura Perkey filed a petition for relief under Chapter 7 of the Bankruptcy Code. John C. Reed was appointed Trustee on October 27, 1995. On February 13, 1996, this Court approved the appointment of John C. Reed and the law firm of Venters, Pletz & Reed to represent the Trustee. In their schedules, the Perkeys listed Sturgeon State Bank (Sturgeon) as a secured creditor pursuant to a deed of trust in a commercial building located in Boone County, Missouri. Sturgeon filed a proof of claim on December 4, 1995, in the total amount of $279,713.40. Of that amount, Sturgeon claims that $80,000.00 is secured and that $199,713.40 is unsecured. The Perkeys also listed their son, Rodney Perkey, as an unsecured creditor in their bankruptcy schedules. On March 22, 1996, Rodney Perkey filed a proof of claim alleging an unsecured nonpriority claim in the amount of $13,245.00. The Perkeys listed only six creditors in their schedules including Sturgeon and Rodney Perkey. So far, Sturgeon and Rodney Perkey are the only two creditors that have filed proofs of claim, however, the bar date is June 5, 1996. Sturgeon's claim is, by a great sum, the largest claim against the estate. The remaining creditors listed by the Perkeys in their schedules have potential claims against the estate in the total amount of $9300.00, which consists of credit card debt.

On January 12, 1996, Sturgeon initiated an adversary proceeding, Adversary Proceeding Number 96–2001–C, by filing a complaint against Richard and Laura Perkey and Rodney Perkey. Sturgeon is represented by Craig A. Smith in this action. In its complaint Sturgeon requests that the Court: (1)

set aside the fraudulent conveyance of real and personal property (including the Perkeys' residence in Audrain County, Missouri) from Richard and Laura Perkey to Rodney Perkey pursuant to section 544 of the Bankruptcy Code; (2) disallow or subordinate the claim of Rodney Perkey; and (3) deny Richard and Laura Perkey a discharge under section 727(a)(2) through (a)(5) of the Bankruptcy Code. This matter was set for trial on April 4 and 5, 1996.

On February 26, 1996, Reed, in his capacity as Trustee, filed a complaint, Adversary Proceeding Number 96–2007–C, against Sturgeon requesting the Court to determine the validity and extent of Sturgeon's interest in the commercial building located in Boone County, Missouri, and to set aside Sturgeon's lien. Craig A. Smith is also representing Sturgeon in this action. This proceeding was also set for trial on April 4 and 5, 1996.

On the eve of trial, counsel for Richard and Laura Perkey filed a motion to dismiss the fraudulent conveyance count in 96–2001–C contending that Sturgeon did not have standing to bring the fraudulent conveyance action. In response, Reed, in his capacity as Trustee, quickly filed a motion requesting that the Court allow him to intervene in 96–2001–C as a party plaintiff. In his motion, Reed stated that counsel for Sturgeon was ready to proceed with the trial and stood ready to represent Reed at the trial scheduled for April 4 and 5, 1996. The Court continued the trial in both adversary proceedings to an indefinite date and scheduled the hearing on the motion to dismiss and motion to intervene for April 11, 1996.

The hearing convened as scheduled and the Court issued its ruling from the bench. This order will serve to memorialize the Court's prior ruling.

### Discussion

■ It is clear that Sturgeon has standing to object to the proof of claim filed by Rodney Perkey, and has standing to object to the Perkeys' discharge under section 727(a). 11 U.S.C. § 502(a); *In re Bluestone,* 102 B.R. 103, 105 (Bankr.N.D.Ohio 1989). However, the case law is well established that Sturgeon does not have standing to bring a fraudulent conveyance action against Richard and Laura Perkey. *See Nebraska State Bank v. Jones,* 846 F.2d 477, 477–78 (8th Cir.1988); *Saline State Bank v. Mahloch,* 834 F.2d 690, 694–95 (8th Cir.1987); *In re Jeter,* 171 B.R. 1015, 1022 (Bankr.W.D.Mo. 1994), *aff'd,* 73 F.3d 205 (8th Cir.1996); *In re Auxano, Inc.,* 87 B.R. 72, 72 (Bankr.W.D.Mo. 1988). The right to invoke a fraudulent conveyance action under section 544 or 548 of the Bankruptcy Code belongs to the Trustee or debtor-in-possession as the representative of all the unsecured creditors. *In re Fletcher,* 176 B.R. 445, 453 (Bankr.W.D.Mich.1995). "An action before the Court to set aside a fraudulent transfer must be in the name of the bankruptcy estate as the real party in interest." *Auxano,* 87 B.R. at 72. The trustee is the representative of the estate. 11 U.S.C. § 323(a).

■ Even though the Perkeys are correct in their assertion that Sturgeon does not have standing to bring the fraudulent conveyance count against them, the Court is not required to immediately dismiss the fraudulent conveyance count. Federal R.Civ.P. 17(a), which is made applicable to adversary proceedings by Fed.R.Bankr.P. 7017, states in pertinent part:

No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Here, the Court may wait to dismiss the fraudulent conveyance count until after a reasonable time has passed in which the Trustee is given an opportunity to substitute himself as the real party in interest in place of Sturgeon. *See Bickford v. Ponce De Leon Care Center,* 918 F.Supp. 377 (M.D.Fla.1996). The Court construes Reed's motion to intervene as just such a motion for substitution. However, if the Court allows Reed to substitute himself as the plaintiff on the fraudulent conveyance count, Reed and Sturgeon will be

aligned as co-plaintiffs against the Perkeys. This will create a situation in which in 96–2001–C Reed will be suing the Perkeys on behalf of all the creditors of the estate, of which Sturgeon is by far the largest creditor and one of only two creditors that have filed proofs of claim, to set aside an alleged fraudulent conveyance of property, and in 96–2007–C Reed will be suing Sturgeon to set aside Sturgeon's lien in unrelated property. On the one hand Reed will be proceeding against the Perkeys seeking to benefit Sturgeon as a creditor of the estate, while on the other hand Reed will be proceeding against Sturgeon in an attempt to eliminate Sturgeon's status as a secured creditor. The Court will discuss the relevant ethical rule in more detail below, but it seems to the Court that the foregoing situation presents a conflict of interest problem. *See generally In re Troy Dodson Constr. Co., Inc.,* 993 F.2d 1211, 1216 (5th Cir.1993) ("It is not clear that a trustee could ethically agree to shortchange one set of creditors' interests in the debtor's estate even in order to improve the unsecured creditors' position. The trustee owes a fiduciary duty to *all* the creditors, not just to the unsecured creditors.") (emphasis in original); *In re Daddario,* 145 B.R. 127, 129 (Bankr.D.Conn.1992) ("Although a bankruptcy trustee may not be acting as a lawyer for the estate, the trustee's relationship to the estate is reasonably analogous to an attorney's relationship with a client. Indeed, the role of a bankruptcy trustee in a case mandates an even stricter standard of conduct than that of a lawyer with a client."); *In re Steele,* 26 B.R. 233, 235 (Bankr.W.D.Ky.1982) ("The trustee is to serve in a totally objective posture. At no time must this clear and concise 'line in the sand' be violated.").

The conflict of interest may seem highly technical, but it still gives the Court a queasy feeling. Because a trustee acts for the benefit of all of the creditors of the bankruptcy estate, Sturgeon in essence is one of Reed's "clients." In one action Reed standing hand-in-hand with Sturgeon will be suing the Perkeys and if that action is successful, Sturgeon will benefit. However, in the other action Reed is suing Sturgeon and Reed's suit, if successful, will detrimentally affect Sturgeon. At the very least, the fact that Reed and Sturgeon would be proceeding as co-plaintiffs in one suit while Reed is suing Sturgeon in another action could raise a question in the mind of a disinterested observer concerning Reed's objectivity. The Court determines that Reed will be allowed to substitute himself as the real party in interest on the fraudulent conveyance count and will not dismiss that count, IF Sturgeon agrees to waive any potential conflict of interest problem. The Court will give Sturgeon ten days from the date this order is entered to file a written waiver. If Sturgeon does not timely file a waiver of any potential conflict of interest problem, the Court will dismiss the fraudulent conveyance count. Upon dismissal, the Trustee may file his own adversary proceeding against the Perkeys for the recovery of any alleged fraudulent transfers. In any event, Sturgeon will be allowed to proceed on its objection to the claim of Rodney Perkey and the section 727 action against Richard and Laura Perkey.

That brings the Court to one final matter, which is whether Sturgeon's counsel may represent Reed on the fraudulent conveyance count. The short answer is no for the following reasons. Relevant is the Model Rule of Professional Conduct set forth in Missouri Sup.Ct.Rule 1.7, which states:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

(b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes the representation will not be adversely affected;

(2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

The Model Rules of Professional Conduct as adopted by the Missouri Supreme Court are applicable to attorneys practicing before this Court. *See* Rule 2.D.2 of the United States District Court for the Western District of Missouri. In this case, if both Reed and Sturgeon consent to Craig Smith's dual representation (representation of Reed on the fraudulent conveyance count in 96–2001–C and representation of Sturgeon in Reed's suit to set aside the lien in 96–2007–C), Craig Smith could satisfy the requirements in Rule 1.7(a).[1] However, not only must an attorney satisfy the conflict of interest rules set forth in the Model Rules of Professional Conduct, an attorney who wishes to be employed by a trustee or debtor-in-possession must also satisfy the requirements of section 327 of the Bankruptcy Code. *See In re Creative Restaurant Management, Inc.,* 139 B.R. 902, 909–10 (Bankr.W.D.Mo.1992).

Section 327 of the Bankruptcy Code states in pertinent part:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

. . . .

(c) In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

11 U.S.C. § 327.

■■■ Section 327 must be strictly construed "in order to maintain the integrity of the bankruptcy process." *In re Temp–Way Corp.,* 95 B.R. 343, 346 (E.D.Pa.1989). The failure to meet either of the requirements in section 327(a) will result in disqualification. *In re Pierce,* 809 F.2d 1356, 1362 (8th Cir. 1987). "If there is any doubt as to the existence of a conflict, that doubt should be resolved in favor of disqualification." *Lee,* 94 B.R. at 177.

■■■ In this case, Craig Smith does not satisfy the requirements of section 327(a) and Reed will not be able to employ him to litigate the fraudulent conveyance count in 96–2001–C. Here, Craig Smith represents an interest adverse to the bankruptcy estate. In *Lee* the bankruptcy court stated:

The term "adverse interest" is not specifically defined in the Bankruptcy Code. The reported cases have defined what it means to hold an adverse interest as follows:

(1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or

(2) to possess a predisposition under circumstances that render such a bias against the estate. . . .

To "represent an adverse interest" means to serve as agent or attorney for entities holding such adverse interests.

*Lee,* 94 B.R. at 177. Here, in 96–2007–C Sturgeon contends that its lien in the commercial building in Boone County is valid, and if the Court determines that the lien is in fact valid and enforceable, that ruling will limit the assets that are available for distribution from the bankruptcy estate. The bankruptcy estate and Sturgeon are in a direct conflict over the validity of a lien. Craig Smith represents Sturgeon and, therefore, because he represents an interest ad-

---

1. Because of Reed's position as Trustee of the bankruptcy estate, an argument can be made that the remaining creditors and the United States Trustee must also approve of the dual representation. *Cf. In re Lee,* 94 B.R. 172, 179 (Bankr.C.D.Cal.1988) (In the context of a similar ethical rule, the bankruptcy court opined: "An attorney who desires to represent a debtor in possession and a conflicting interest must obtain a written waiver from the debtor, all creditors and the United States trustee."). Because the final answer to the question presented does not depend on resolving this point, the Court will save this particular issue for another day.

verse to the bankruptcy estate he is disqualified from serving as counsel for Reed in 96–2001–C. Further, Craig Smith may not seek refuge in section 327(c). Subsection (c) of section 327 does not preempt the basic requirements set forth in subsection (a). *In re Interwest Business Equip., Inc.,* 23 F.3d 311, 316 (10th Cir.1994). The attorney must meet the requirements of section 327(a) before consideration of the attorney's employment under section 327(c) comes into play.

### Conclusion

In sum, the Perkeys correctly assert that Sturgeon does not have standing to bring a fraudulent conveyance action against them. The Court construes Reed's motion to intervene as a motion to substitute himself as the proper party on the fraudulent conveyance count. Because of ethical considerations, the Court will grant Sturgeon ten (10) days from the date this order is entered in which to file a written waiver of any potential conflict of interest problem created by Reed and Sturgeon proceeding as co-plaintiffs in 96–2001–C, Reed to pursue the fraudulent conveyance count and Sturgeon to prosecute the objection to discharge and objection to proof of claim counts. If Sturgeon fails to file the written waiver, the Court will grant the Perkeys' motion to dismiss the fraudulent conveyance count and will deny Reed's motion to intervene. Reed may then file his own fraudulent conveyance action against the Perkeys. In any event, Sturgeon may proceed with its objection to discharge and objection to Rodney Perkey's claim. If Sturgeon timely files the written waiver, the Court will grant Reed's motion to intervene and will allow the substitution of Reed as the proper plaintiff on the fraudulent conveyance count, and will deny the motion to dismiss. Counsel for Sturgeon, Craig A. Smith, will not be allowed to represent Reed on the fraudulent conveyance count.

The foregoing Memorandum Order constitutes Findings of Fact and Conclusions of Law as required by Fed.R.Bankr.P. 7052.

So ORDERED.