**Carlos RODRIGUEZ QUESADA,**
**Appellant,**

v.

**UNITED STATES TRUSTEE, Appellee.**

**CIV. No. 95–2314(SEC).**

United States District Court,
D. Puerto Rico.

June 30, 1998.

---

Carlos E. Rodriguez–Quesada, Woods & Woods, San Juan, PR, for Plaintiffs.

Carmen D. Conde–Torres, Hato Rey, PR, for Defendants.

## OPINION AND ORDER

CASELLAS, District Judge.

Pending before this Court is an appeal (**Docket # 2**) taken by Carlos Rodriguez Quesada, of an Order from The United States Bankruptcy Court for the District of Puerto Rico, denying him reimbursement compensation as trustee's counsel for services rendered by two professional persons in several bankruptcy cases. For the reasons stated below in this Opinion and Order, the decision from the Bankruptcy Court is **AFFIRMED** and the above-captioned action is **DISMISSED.**

### Factual Background

The facts of this case are uncomplicated. On August 13, 1990, Pedro Abich, Inc. filed a voluntary petition in the Bankruptcy Court for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code. On September 24, 1992, the Bankruptcy Court converted the debtor's case to a Chapter 7 liquidation case. In accordance with this conversion, on September 25, 1992, appellant Quesada was appointed as the interim Chapter 7 trustee of the debtor's estate.

At some point thereafter, trustee Quesada filed the requisite attorney disclosure statement pursuant to Rule 2016 of the Federal Rules of Bankruptcy Procedure. However, the statement failed to mention that any additional professionals or employees would be hired by counsel to perform services regarding his position as trustee, a requirement of Rule 2016.[1] This omission gives rise to the matter before the Court, because Quesada later hired two associate attorneys who rendered services in the aforementioned bankruptcy cases.

Subsequently, on January 27, 1994, appellant attempted to obtain reimbursement from the debtor's estate for the contested fees corresponding to the work completed by associate Iris Valentin (128 hours) and associate Luis Suarez (11 hours).[2] Appellant sought $29,320 for services rendered on behalf of the estate and the reimbursement of expenses in the amount of $393.53. However, the United States Trustee opposed the portion of the request regarding the $13,900 in fees representing the services rendered by the subcontracted associates, and maintained that since the associate attorneys were neither members of appellant's firm nor mentioned in the Rule 2016 application, the requested compensation should be denied.

The Bankruptcy Court agreed with the United States Trustee and denied appellant's request for fees. In its Order, the Court concluded "that in order for counsel to be compensated for work performed by non employees, the facts and the need to employ additional professionals must have been disclosed in the application for employment or immediately after counsel became aware of the need." *See* (**Docket # 619**) of Case No. 90–04133(ESL).

On appeal, appellant argues that the Bankruptcy Court incorrectly denied his application for allowance of compensation for services rendered by trustee because (1) the associate attorneys were working as independent sub-contractors and did not require an additional application; (2) the associates

1. **Rule 2016. Compensation for Services Rendered and Reimbursement of Expenses**

   (a) An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested . . .

   (b) Every attorney for a debtor, whether or not the attorney applies for compensation, shall file and transmit to the United States trustee within 15 days after the order for relief, or at another time as the court may direct, the statement required by § 329 of the Code including whether the attorney has shared or agreed to share compensation with any other entity. The statement shall include the particulars of any such sharing or agreement to share by the attorney, but the details of any agreement for the sharing of the compensation with a member or regular associate of the attorney's law firm shall not be required. A supplemental statement shall be filed and transmitted to the United States trustee within 15 days after any payment or agreement not previously disclosed.

2. Appellant provided the associate attorneys compensation at a rate of $100/hr. with his own funds, and now seeks reimbursement from the debtor's estate.

were working as para-professionals and did not require a separate application; and (3) the associate's application for employment *nunc pro tunc* met the necessary requirements.

**Jurisdiction**

■ Pursuant to Bankruptcy Rule 8001(a) "A party may appeal [to a district court] as of right from a bankruptcy court's final judgment, order, or decree."[3] *In re Delta Petroleum (P.R.), Ltd.* 193 B.R. 99, 104 (Bankr.P.R.1996)(*quoting* 28 U.S.C. § 158(a)(1) (1993 & West Supp.1995)). A "final decree" in a bankruptcy case is different than ordinary civil "final decrees" in that:

> [I]nstead of "ending the litigation on the merits and leaving nothing for the court to do but execute the judgment," in bankruptcy an order "need not dispose of all aspects of a case in order to be final; an order which disposes of a 'discrete dispute within the larger case' will be considered final and appealable ... The order in question must, however, 'conclusively determine' the dispute."(citations omitted).

*Id.* at 104. Therefore, we conclude that the Bankruptcy Court's decision denying appellant compensation is a "final decree," and that our jurisdiction has been properly invoked pursuant to 28 U.S.C. § 158(a)(1).

**Standard of Review**

■ A dispute over an award or denial of attorney's fees is considered a core proceeding. *Delta Petroleum,* 193 B.R. at 106. According to 28 U.S.C.A. § 157(b)(2)(A), "core proceedings include, but are not limited to— matters concerning the administration of the estate." (West 1998). "In interpreting the Bankruptcy Code, the courts have taken the appointment of attorneys pursuant to § 327[4], and the awarding of fees, pursuant to § 330[5], to be comprehended within the scope of ad-

ministrative matters for the purposes of § 157." *Delta Petroleum,* 193 B.R. at 105.

■ Due to the fact-specific nature of core proceedings in general, "[h]istorically, bankruptcy courts have been accorded wide discretion ... in regard to the terms and conditions of the engagement of professionals." *Id.* at 106,(*quoting In re Martin,* 817 F.2d 175, 182 (1st Cir.1987)). "Hence, district courts review grants [or denials] of awards of compensation for services and expenses pursuant to § 330 under an abuse of discretion standard." *Id., citing In re Spillane,* 884 F.2d 642, 646 (1st Cir.1989); *Boston & Maine Corp. v. Sheehan, Phinney, Bass & Green,* 778 F.2d 890, 894 (1st Cir.1985); *In re Boston & Maine Corp. v. Moore,* 776 F.2d 2, 6 (1st Cir.1985); *In re DN Associates,* 160 B.R. 20, 22 (D.Me.1993); *In re Casco Bay Lines, Inc.,* 25 B.R. 747, 753 (1st Cir. BAP 1982).

**Applicable Law**

Section 327 of the Bankruptcy Code governs the employment of professional persons in bankruptcy cases. Specifically, § 327(a) of the Code provides:

> [T]he trustee, with the court's approval, may employ one or more appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.[6]

Section 101(4) of the Bankruptcy Code defines "attorney" as "attorney, professional law association, corporation, or partnership, authorized under applicable law to practice law," and Fed. R. Bankr.P.2014(b) provides that if the Bankruptcy Court authorizes the employment of a law partnership or corporation or a named attorney, "any corporation or

---

**3. Rule 8001. Manner of Taking Appeal**

**(a) Appeal as a right; how taken**
An appeal from a judgment, order, or decree of a bankruptcy judge to a district court or bankruptcy appellate panel as permitted by 28 U.S.C. § 158(a)(1) ... shall be taken by filing a notice of appeal with the clerk within the time allowed by Rule 8002 ...

**4.** 11 U.S.C.A. § 327 (West 1998).

**5.** 11 U.S.C.A. § 330 (West 1998).

**6.** Section 327(d) provides: "with the court's approval, the trustee may act as attorney or accountant for the estate if such authorization is in the best interest of the estate."

individual may act as attorney ... so employed, without further order of the court." [7]

In the present action appellant seeks an "allowance of administrative expenses" pursuant to § 503 of the Bankruptcy Code, which provides in pertinent part:

    (a) An entity may file a request for payment of an administrative expense

    (b) After notice and a hearing, there shall be allowed, administrative expenses, other than claims allowed under section 502(f) of this title including-

    (2) compensation and reimbursement awarded under section 330(a) of this title.

However, before an allowance for expenses can be made compensation must first be awarded pursuant to section 330(a) of the Bankruptcy Code.[8]

Through this somewhat confusing maze of rules and sections the basic dilemma we must consider is whether or not appellant's failure to seek the Bankruptcy Court's approval before hiring two associate attorneys constitutes a bar to his reimbursement for the services they provided.

### Application of Law to Facts

It is important, from the outset of this discussion, to set forth the policy concerns which necessitate the Bankruptcy Court's approval before a professional can provide services for the estate:

> To avoid the enormous potential for abuse in the hiring of consultants, appraisers, business advisors, and others who offer their professional services to beleaguered ... debtors, the court should carefully scrutinize applications for employment before the trustee or debtor contracts for such services. To hold otherwise could be to invite officious intermeddlers and additional unwarranted and unnecessary financial burdens to an already troubled estate, to the detriment of other creditors and to the benefit of none except those employed by the debtor.

*In re Babcock Dairy Company of Ohio, Inc.,* 70 B.R. 691, 693 (Bankr.N.D.Ohio 1987) *quoting In re Carolina Sales Corp.,* 45 B.R. 750, 753 (Bankr.E.D.N.C.1985). Keeping in mind the important policy concerns, the highly deferential standard of review, and the abundance of case law we now consider each of appellant's arguments.

■ Appellant first argues that the two associate attorneys hired in connection with the bankruptcy cases were not working as "professionals" pursuant to § 327(a) of the Bankruptcy Code, but were instead acting as independent sub-contractors. However, appellant also argues, in seeming contradiction to his initial point, that the associates were participating members in the law firm's business in the cases. Therefore, the crucial inquiry remains whether or not these two associates can be considered "members" or "regular associates" of appellant's firm. Although such an inquiry may at first appear to be somewhat trite, it is in fact of the utmost

---

7. **Rule 2014. Employment of Professional Persons**

  (a) **Application for an order of employment**

An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327 ... shall be made only on application of the trustee or committee ... The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor ...

(b) **Services rendered by member or associate of firm of attorneys or accountants**

If, under the Code and this rule, a law partnership or corporation is employed as an attorney, ... or if a named attorney ... is employed, any partner, member, or regular associate of the partnership, corporation or individual may act as attorney ... so employed, without further order of the court.

8. **Section 330. Compensation of officers**

(a)(1) After notice to the parties in interest and the United States Trustee and a hearing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under Section 327 or 1103–

  (A) reasonable compensation for actual, necessary services rendered by the trustee, examiner, professional person, or attorney and by any paraprofessional person employed by any such person; and

  (B) reimbursement for actual, necessary expenses.

importance. This is so because if the two lawyers are regular associates or partners in the appellant's firm, then pursuant to Fed. R. Bankr.P.2014(b), they may be "so employed without further leave of the court."

In the present matter we believe that the associate attorneys were neither regular associates nor partners in appellant's firm. Our conclusion comes mainly from appellant's brief, which we believe correctly summarizes his working relationship with the associates. Appellant begins his brief by stating:

> The Court must recognize the logistic reality of administering the present day legal practice, where a complete staff of attorneys and other personnel cannot be maintained in stand-by awaiting for billable work to appear. At least, a small firm or a solo practitioner cannot afford to do so. Staff is hired for specific jobs and then released upon completion of the same.

(Docket # 5). We believe that this request to the Court serves quite tellingly as evidence of the true nature of the associates' working relationship with appellant Quesada. Therefore, we find that these associate attorneys were indeed independent sub-contractors working for a solo practitioner.

Furthermore, because this Court concludes that the associate attorneys were not members or regular associates of appellant's firm, their involvement in this matter could only occur with the Bankruptcy Court's approval. "The clear, established law in this type of conflict is that a professional hired by a debtor without the court's approval may not be compensated." *In re American Colonial Broadcasting Corporation,* 74 B.R. 27, 28 (D.P.R.1987) (citations omitted). The "court's approval" is sought by the trustee pursuant to Rule 2014, and without this approval the non-approved professional serves in a volunteer capacity.

Therefore, we believe that since the associate attorneys were sub-contracted by appellant to provide legal services for the estate, and were not "partners" or "regular associates" with appellant's firm, their services were for all intents and purposes rendered gratuitously.

■ Appellant next argues that the associate attorneys were "para-professional" within the meaning of § 330 of the Bankruptcy Code. Citing the legislative history of § 330, appellant argues that Congress intended trustees to use para-professionals in order to reduce the costs of administering bankruptcy cases. Appellant maintains that since the associate's work was assigned, supervised, and signed by him, that they were not truly working as professionals within the meaning of the Bankruptcy Code. Essentially, appellant claims that the rendered services at issue were those of a paralegal.

Notwithstanding this argument, Quesada acknowledges that the associates were compensated at an associate attorney's rate of one-hundred dollars per/hour.($100/hr.) Therefore, we find no merit in appellant's argument that the services rendered were those of a paraprofessional, because the one-hundred dollars per/hour billing rate sought by appellant is well above the hourly rate charged for paralegals in this community.

■ Appellant's final argument is that the appointment of the attorneys should be allowed by this Court *nunc pro tunc.*[9] Therefore, "the threshold question is whether the statute[§ 327 ] permits the post facto authorization of professional services." *In re Jarvis,* 53 F.3d 416, 418 (1st Cir.1995). In the *Jarvis* decision the First Circuit set forth the standard for granting "post facto" authorization for professional services. The Court concluded "that the applicant must demonstrate both the professional person's suitability for appointment and the existence of extraordinary circumstances sufficient to excuse the failure to file a timely application." *Id.* at 419. In the present case the associate attorney's suitability is not at issue; therefore, we will proceed with the "extraordinary circumstances" prong of the test.

---

**9.** Courts and lawyers often refer to the appointments requested by appellant as *nunc pro tunc.* However, the First Circuit, in order to avoid semantic confusion, refers to such appointments as "post facto."

The Court noted that there are several factors that the Bankruptcy Court can consider when determining whether extraordinary circumstances exist. Some of the factors include: whose responsibility it was for applying for approval; the nature and extent of any time pressure which may have forced the rendering of services without prior approval; the delay between denial of initial approval; and the possibility that allowing compensation would prejudice an innocent third party such as a creditor. *Id.* at 420.

In this case, it has not been alleged that any of the aforementioned factors led to appellant's failure to seek the Court's approval of the professionals. The only proffered excuse is mere oversight; and as stated in *Jarvis*, "[m]ere oversight does not fall within the realm of extraordinary circumstances for these purposes." *Id.* at 421. This conclusion is supported by the fact that the subcontracted professional's law firm was sought as special counsel in 1992, and that these subcontracted professionals had practiced before the Bankruptcy Court in this case. Therefore, all of the parties should have realized the importance of obtaining the required approval for each of the services rendered to the appellant.

Based on the lack of any "extraordinary circumstances" in the present matter, we agree with the Bankruptcy Judge's conclusion that appellant's "post facto" application should be denied.

## Alternative Grounds for Dismissal

■ While the Court finds it advisable to, whenever possible, address the substantive issues of a claim, in the alternative we hold that this appeal should be dismissed because of appellant's failure to file a timely brief pursuant to Fed. R. Bankr.P 8009(a).[10]

In this case, the appellant gave notice of appeal on September 25, 1995, and by leave of this Court was given until December 1, 1995, to file his brief. At that time we advised appellant that "failure to comply will result in the dismissal of the action." (Dock-

et # 4). Appellant did not file his brief until three days later, December 4, 1998. Therefore, we conclude as "the case law holds that it is proper to dismiss an appellant's appeal for failure to file a brief or request an extension within the time allotted by the Bankruptcy Rules." *In re Quevedo*, 35 B.R. 117 (D.C.P.R.1983).

## Conclusion

Although our decision to deny appellant's request for compensation may seem harsh, granting his request would effectively supplant the Court's ability to enforce necessary procedural rules. Therefore, we conclude that the Bankruptcy Court's Order denying appellant's request for compensation should be **AFFIRMED** and the above-captioned action should be **DISMISSED**. Judgment will be entered accordingly.

**SO ORDERED.**

---

10. **Rule 8009. Briefs and Appendix; Filing and Service**
  (a) **Briefs**
    Unless the district court of the bankruptcy appellate panel by local rule or by order excuses

the filing of briefs or specifies different time limits:
(1) The appellant shall serve and file a brief within 15 days after entry of the appeal on the docket pursuant to Rule 8007.