**In re DELANEY HOUSE, LLC, Debtor.**

**No. 03–43157–HJB.**

United States Bankruptcy Court, D. Massachusetts.

July 9, 2004.

Gary Weiner, Weiner & Rothschild, Springfield, MA, Chapter 11 Trustee.

Stephen Meunier, Office of the U.S. Trustee, Worcester, MA, United States Trustee.

### MEMORANDUM OF DECISION

HENRY J. BOROFF, Bankruptcy Judge.

Before the Court is the "Debtor's Application For Authority to Employ Special Counsel ..." (the "Robin Application"). While the title of the pleading suggests that Delaney House, LLC (the "Debtor") seeks to employ special counsel under 11 U.S.C. § 327(e), a more careful reading of the Robin Application reveals that the Debtor actually seeks leave to employ co-counsel, pursuant to 11 U.S.C. § 327(a).[1]

### I. FACTS AND TRAVEL OF THE CASE

On April 24, 2003, the Debtor, a Delaware corporation, filed a voluntary petition in the District of Delaware seeking relief under Chapter 11 of the Bankruptcy Code (the "Code"). As of the petition date, the Debtor's assets consisted of a Holyoke, Massachusetts restaurant and hotel (jointly, the "Assets"). BankNorth (the

---

1. Employment of co-counsel under § 327(a) is quite different and easily distinguishable from the employment of special counsel under § 327(e). While employment under either section of the Code may, and as set forth below should, relate to discrete matters within a case, attorneys who are employed under § 327(a) are both authorized to render services with respect to the same matter. Conversely, when an attorney is working under the authority of § 327(e), the attorney who was employed under § 327(a) may not perform similar services, excepting only as they may relate to coordination with the general affairs of the debtor or the estate.

"Bank"), owed approximately ten ($10,000,-000) million dollars, was the senior mortgagee on the real estate and first lienholder on the personalty. The Bank had been in possession of the Assets and, through its agent, had been operating the Debtor's businesses since the date of a state court order, issued months before, granting it permission to do so.

The Bank responded to the commencement of the Chapter 11 case with a motion seeking a transfer of venue to the District of Massachusetts. The Bank also filed a motion seeking dismissal of the Chapter 11 case or, in the alternative, relief from the automatic stay in order to foreclose on the Assets (the "Bank Motion"). The request for transfer of venue was granted on May 30, 2003.

With the case now in the District of Massachusetts, this Court scheduled an expedited hearing on the Bank Motion. The Debtor opposed and filed its own motion for turnover of the Assets, and, upon turnover, leave to use the Bank's cash collateral. All parties recognized the need for an expeditious resolution. On June 6, 2003, this Court denied the Bank's request for dismissal of the case and scheduled for June 12, 2003 an evidentiary hearing on, *inter alia,* the Bank's request for relief from the automatic stay, as well as the Debtor's request for turnover and use of cash collateral (the "Evidentiary Hearing").[2]

Upon transfer of the case to Massachusetts, the Debtor retained Jonathan R. Goldsmith ("Attorney Goldsmith"), pursuant to § 327(a). On June 10, 2003, the Debtor filed an application, later allowed, to retain Attorney Goldsmith for general representation in the case. On the same day, however, the Debtor filed the Robin Application seeking to employ Attorney Louis S. Robin ("Attorney Robin") in order to "completely and fully represent the interests of the Debtor and the Debtor's estates." Robin Application, p. 2. In support, the Debtor represented that there were "several adversarial matters pending and being investigated" that "require[d] immediate attention," including the Bank Motion, the Debtor's motion to compel the Bank to turn over the Assets, and a pending cash collateral motion all then scheduled for evidentiary hearing on June 12, 2003.[3] *Id.* The Debtor averred that Attorney Robin was "experienced in litigation, bankruptcy, and related areas" and was "well qualified to perform these services for the Debtor." *Id.* The Debtor further represented that Attorney Robin might also "assist the Debtor in other bankruptcy related matters in this case, such as the plan of reorganization." *Id.* However, in no event "[would] there be any charged time that would be considered a duplication of efforts." *Id.* "Furthermore, [Attorney Robin] would charge at the rate of $175.00 per hour (which [was] less than [Attorney Robin's] standard rate in these type of cases) as a courtesy to the parties." *Id.*

Non-evidentiary hearings on the Robin Application were held on June 26, 2003 (the "June Hearing") and on July 31, 2003 (the "July Hearing"). The United States trustee (the "UST") opposed, and the

---

2. The Evidentiary Hearing was subsequently continued and held on June 20 and 23, 2003.

3. As is suggested, the issues were hardly garden variety. In addition to the usual issues presented by such motions, here the Bank contended that a deed in lieu of foreclosure had transferred the Assets to a third party prior to the filing of the bankruptcy petition. The Debtor countered that the bankruptcy petition had been filed minutes before the Bank's alleged transfer, thereby preserving the Debtor's interest in the Assets and rendering the deed in lieu of foreclosure a nullity.

Court took the Robin Application under advisement.[4]

## II. POSITIONS OF THE PARTIES

Attorney Goldsmith and Attorney Robin contend that the Robin Application meets the requirements of 11 U.S.C. § 327,[5] Fed. R. Bankr.P.2014, and Massachusetts Local Rule of Bankruptcy Procedure ("MLBR") 2014–1. They maintain that Attorney Robin was qualified to, and did provide, valuable, necessary, non-duplicative services to the estate, specifically in preparation for and during the Evidentiary Hearing.[6]

At the July Hearing, the Court expressed various concerns about the Robin Application, including: 1) the necessity for the services; 2) the risk of duplication; and 3) the precedential effect of a court order approving such employment.

As to the actual need for co-counsel in this case, Attorney Goldsmith maintained that the Debtor required the services of Attorney Robin to help Attorney Goldsmith prepare for the Evidentiary Hearing, in particular the Bank's motion for relief from stay, which was complex and involved multiple witnesses. More specifically, Attorney Goldsmith explained that Attorney Robin was responsible for reviewing the Bank's records in the case and preparing the cross-examination of the Bank's bookkeeper witness. Transcript Of Hearing On: Application Of Debtor For The Authority To Employ Special Counsel Before The Honorable Henry J. Boroff, J.U.S.B.C., p. 4 (June 26, 2003) ("Transcript 1").

As to concerns expressed with respect to the risk of duplication of services, Attorney Goldsmith explained that the only overlap in his and Attorney Robin's services to the estate involved conferences to discuss the strategy at the Evidentiary Hearing. Transcript of Continued Hearing On: (# 37) Application of Debtor For Authority To Employ Special Counsel Before The Honorable Henry J. Boroff, J.U.S.B.C., p.

4. Notwithstanding the pendency of the Robin Application, however, both Attorney Goldsmith and Attorney Robin appeared on the Debtor's behalf at the two-day Evidentiary Hearing. At the conclusion of that hearing, the Court ordered, *inter alia*, the appointment of a Chapter 11 Trustee. Relief from the automatic stay was granted later on.

5. 11 U.S.C. § 327 states in pertinent part:

   (a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, ... or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.
   . . .
   (e) The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.
   . . .
   11 U.S.C. § 327 (2003).

6. At the June Hearing, the Court invited the parties to refine the Application and/or their opposition thereto to address whether the authority sought was for employment under § 327(a) or under § 327(e). Attorney Goldsmith continued, however, to refer to Attorney Robin interchangeably as either special or co-counsel, while leaning on the language of § 327(a). In his remarks to the Court, Attorney Robin referred exclusively to § 327(a). For his part, counsel to the UST rightfully observed that the language of the Application sounded in § 327(a). Inasmuch as the gravamen of the Application is the Debtor's assertion that it needed both Attorney Goldsmith and Attorney Robin to work on the same matter, the Court will treat the Application as one for co-counsel under § 327(a).

9 (July 31, 2003) ("Transcript 2"). Moreover, Attorney Robin stated that he had "no charged" certain entries and charged a lower rate for others in sensitivity to the issues of duplication of services and benefit to the estate. *Id.* at 11.

When the Court expressed concern about the open-ended terms of the proposed employment, Attorney Goldsmith emphasized that, notwithstanding the broad language of the Robin Application, Attorney Robin had only rendered services in connection with the Evidentiary Hearing. *Id.* at 8.

Attorneys Goldsmith and Robin offered several responses to concerns regarding the precedential impact of allowing the Application, namely: 1) the risk of inflated administrative costs in future cases; and 2) the difficulty in articulating coherent standards that attorneys could rely upon in order to ensure that payment for services rendered in good faith would not be subsequently disallowed. As to the former, Attorneys Goldsmith and Robin argued that there is no real difference between the cost of services rendered by co-counsel from different firms and the cost of those services if rendered by large firms, who often assign multiple associates and/or partners to work together on components of a large case. And, since the approval of employment applications is left to the Court's sound discretion, they contended that a case by case approach would serve the Court's purposes in preventing abuse and would allow competent counsel from smaller firms to represent larger bankruptcy estates. As for articulating a standard on which attorneys could rely, Attorney Robin observed that attorneys are already on notice of the courts' discomfort with the employment of co-counsel

and realize that such employment would not be common fare.

The UST responded that its policy to oppose co-counsel arrangements is based on the perceived danger of escalating fees which might follow from such arrangements; essentially, that co-counsel from different firms would have an economic incentive to drive those fees upward. Counsel to the UST attempted to illustrate the point by noting that, "if [attorneys] were from the same firm, the money that would be earned during the course of the case would go into essentially the same pocket; but … if two different firms are involved, monies would be essentially split … into different pockets, and therefore each one has a lesser share." *Id.* at 12. Counsel to the UST conceded that, owing to the exigencies of the instant case, Attorney Goldsmith "accurately identified the need for some help at a critical time." *Id.* at 13. Nevertheless, based upon the possibility that allowing the Robin Application could establish a precedent resulting in a blurring of the line separating necessary beneficial services from duplicative, non-beneficial services, the UST advocated maintaining a blanket prohibition on the employment of co-counsel.

## III. *DISCUSSION*

■ This Court's authority to approve the employment of counsel to a Chapter 11 debtor arises from 11 U.S.C. § 327, Fed. R. Bankr.P. 2014, and MLBR 2014–1. Approval or denial is within a bankruptcy court's sound discretion. 11 U.S.C. § 327(a) (2003); Fed. R. Bankr.P. 2014 (2003); *see Rodriguez–Quesada v. U.S. Trustee,* 222 B.R. 193, 196–97 (D.P.R. 1998). Under the employment/compensation scheme established by §§ 327 and 330[7] of the Code, an order approving an

---

7. Section 330 states in pertinent part:

(a)(1) After notice to the parties in interest and the United States Trustee and a hear-

employment application does not establish a right to payment from the bankruptcy estate; compensation depends on the "second look" taken by the court as mandated by § 330. *Ferrara & Hantman v. Alvarez (In re Engel)*, 124 F.3d 567, 571 (3rd Cir. 1997). Without the bankruptcy court undertaking this two step process, "the structure of the Bankruptcy Code and Rules which contain provisions requiring *both* approval of employment *and* after the fact approval of compensation" would be rendered meaningless. *Ferrara*, 124 F.3d at 572 (quoting *In re Arkansas*, 798 F.2d 645, 648–49 (3rd Cir.1986)) (emphasis in original).

There has indeed been a historical disinclination in this district to allow co-counsel from different law firms to represent Chapter 11 debtors. A search of First Circuit case law reveals, however, that there has never been an outright ban. *See In re Achievement Center, Inc.*, 1996 WL 334422 (Bankr.D.N.H.1996) (permitting co-counsel to represent Chapter 11 debtor); *In re Almacs*, 178 B.R. 598, 603 (Bankr. D.R.I.1995) (allowing the employment of lead and local co-counsel); *In re New England Metal, Inc.*, 155 B.R. 38, 40 (Bankr. D.R.I.1993) (allowing employment of co-counsels for the debtor); *In re Bedford Computer Corp.*, 86 B.R. 6, 7 (Bankr. D.N.H.1987) (allowing out of state co-counsel); *In re Malden Mills, Inc.*, 42 B.R.

476, 479–80 (Bankr.D.Mass.1984) (permitting employment of co-counsel throughout the pendency of the bankruptcy case); *In re Table Talk*, 22 B.R. 706, 707 (Bankr. D.Mass.1982) (permitting the debtor to retain co-counsel); *In re Garland Corp.*, 8 B.R. 826, 838 (Bankr.D.Mass.1981) (permitting co-counsel to represent debtor).[8] Notwithstanding the admonitions of the UST and the concerns of this Court, there has been a thread throughout the First Circuit-including the District of Massachusetts-permitting the employment of co-counsel in appropriate settings.

There is nothing in the record to suggest that Attorney Robin holds or represents any interest adverse to the estate. He is a disinterested person as defined and required by the Code. The record reveals, and the UST agrees, that the complexities and exigencies of the impending Evidentiary Hearing warranted the Debtor's employment of Attorney Robin for the discrete purpose of assisting in that litigation. The Debtor needed help and turned to Attorney Goldsmith. The legal services required were more than he could supply in a short space of time. Consequently, Attorney Goldsmith and the Debtor then turned to Attorney Robin to fill the gap.

Where the affairs of a debtor are such that the services of more than one attorney are needed to handle a discrete mat-

---

ing, and subject to sections 326, 328, and 329, the court may award to a trustee, an examiner, a professional person employed under section 327 or 1103—
  (A) reasonable compensation for actual, necessary services rendered by the ... professional person, or attorney ... and
  (B) reimbursement for actual, necessary expenses.
  ...
(4)(A) Except as provided in subparagraph (b), the court shall not allow compensation for—
  (i) unnecessary duplication of services; or

  (ii) services that were not—
  (I) reasonably likely to benefit the debtor's estate; or
  (II) necessary to the administration of the case.
11 U.S.C. § 330 (2003).

**8.** The *Garland* case is also significant because it was decided by the late Judge Harold Lavien, an outspoken advocate for an informal prohibition against the employment of co-counsel. Transcript 1 at p. 8; Transcript 2 at p. 10.

ter, the risk of duplication of services is no higher if co-counsel hail from different firms than if those services are rendered by more than one attorney from the same firm. Of course, retaining co-counsel for a discrete purpose is far less likely to raise issues fatal to a subsequent fee application than retention based upon an open-ended engagement. Where the services are not limited by type and/or duration, the risk that the Court will disallow compensation for unnecessary duplication of services substantially increases.[9]

This Court does not discount the understandable concerns of the UST. This Court recognizes and empathizes with the UST with respect to the difficulties associated with evaluating any fee application. But while it is the role of the UST to police the system and of the Court to remain vigilant, the Court should evaluate employment and fee applications on their merits. It would be a mistake to fashion policy based solely on the possibility of abuse.

## IV. *CONCLUSION*

The Robin Application will be allowed. However, Attorney Robin should be mindful of the aforementioned "second-look" mandate of the employment/compensation scheme under §§ 327 and 330. *See Boston and Maine Corp. v. Moore*, 776 F.2d 2, 6–7 (1st Cir.1985); *Furtado v. Bishop*, 635 F.2d 915, 920 (1st Cir.1980); *Garb v. Marshall (In re Narragansett Clothing Company)*, 210 B.R. 493, 497 (1st Cir. BAP 1997); *In re Bank of New England Corp.*, 142 B.R. 584, 586 (D.Mass.1992); *In re ACT Manufacturing*, 281 B.R. 468, 479 (Bankr.D.Mass.2002); *In re Anolik*, 207 B.R. 34, n. 11 (Bankr.D.Mass.1997); *In re 1095 Commonwealth Ave. Corp.*, 204 B.R.

284, 290 (Bankr.D.Mass.1997); *In re Smuggler's Beach Properties, Inc.*, 149 B.R. 740, 743 (Bankr.D.Mass.1993); *In re First Software Corp.*, 79 B.R. 108, 112–13 (Bankr.D.Mass.1987); *In re WHET, Inc.*, 58 B.R. 278, 285 (Bankr.D.Mass.1986)..

An order will issue in conformance with this Memorandum of Decision.

### *ORDER*

For the reasons set forth in this Court's Memorandum of Decision of even date, the "Debtor's Application For Authority to Employ Special Counsel ...," which the Court finds and rules is truly a request for leave to employ co-counsel, pursuant to 11 U.S.C. § 327(a), is GRANTED.

---

9. For example, the instant Application also sought authority to employ Attorney Robin to "assist the Debtor in other bankruptcy related matters in this case, such as the plan of reorganization." In light of the size of the case and the issues contained therein, exclusive of the contest with the Bank, it is difficult to see how that employment as co-counsel could be justified under § 327(a). The Court does not, however, need to more fully address the issue since Attorney Robin did not have occasion to render those services.