53 B.R. 285 (1985)
In re YANKEE SEAFOOD CORPORATION, Bankrupt.
Bankruptcy No. 76-123.
United States Bankruptcy Court, D.Rhode Island.
September 13, 1985.

*286 DECISION ON APPLICATIONS FOR ALLOWANCE
ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.
Before the Court are applications for compensation filed by Norman G. Orodenker, Esq., of the firm of Licht & Semonoff, and Thomas Rosenfield, Esq., of the firm of Rustigian & Rosenfield, for services rendered as co-counsel to the official Creditors' Committee. The applicants request $10,080 plus costs, for services performed from May 3, 1976 through October 19, 1976. They tell us that substantial time was expended as co-counsel for the Creditors' Committee, and that they rendered legal services which were "highly beneficial to the within estate" and which contributed directly to "the consummation of a Plan of Arrangement bringing to the creditors and stockholders a far better return on the obligations owed . . . than could otherwise be anticipated." Based on the record, we must conclude that these representations are groundless and, at best, inaccurate.
To begin with, the claim of substantial achievement or favorable result for creditors is puzzling, since the total assets ($10,500) are not sufficient to pay administrative expenses, let alone $400,000 in claims by general creditors who will receive nothing. In addition, the attorney for the debtor, who has billable time of $24,000, will be compensated for but a fraction of his effort, all of which, incidentally, appears to have been reasonable.
Because this is a nominal asset case, the issue of the value of services performed by the applicants is quite moot. Nonetheless, pursuant to our obligation to review all applications, see Blake v. Doyle (In re Doyle-Lunstra Sales Corp.), 19 B.R. 1003 (D.S.D.1982), and after examining the nature of the services allegedly performed, we fail to see where co-counsel's activities were "highly beneficial" to the estate, as alleged, or of any benefit whatsoever.
In this case, we are compelled to point out that courts may not allow double compensation for the same services, where attorneys are acting jointly in the same capacity, see In re Potter's Gasoline Distribution, Inc., 41 B.R. 771 (Bankr.D.R.I. 1984); In re Sapolin Paints, Inc., 38 B.R. 807, 11 B.C.D. 875 (Bankr.E.D.N.Y.1984); In re Crutcher Transfer Line, Inc., 20 B.R. 705 (Bankr.W.D.Ky.1982), and that it is the court's responsibility to refuse compensation for excessive, unnecessary, or duplicative hours. See In re Liberal Market, Inc., 24 B.R. 653 (Bankr.S.D.Ohio 1982). It is clear, based on the time and nature of services described in each application, that counsel have engaged in unnecessary and unproductive duplication to a degree seldom seen here. The following entries from their respective applications, although not complete, illustrate the point.

 Orodenker Rosenfield
 4/16/76 Attend meeting of informal 4/16/76 Attend meeting of informal
 Creditor's Committee at Galilee; Creditor's Committee at Galilee;
 review petitions review petitions
 4/26/76 Review schedules; attend informal 4/26/76 Review schedules; attend informal
 meeting of creditors; meeting of creditors;
 attend first meeting of creditors attend first meeting of creditors
 at Bankruptcy Court; at Bankruptcy Court;
 letter to Creditor's Committee; letter to Creditor's Committee;
*287
 prepare Election Sheet prepare Election Sheet
 re Creditor's Committee re Creditor's Committee
 5/3/76 Attend meeting of creditors; 5/3/76 Attend meeting of creditors;
 letter to creditors and proof letter to creditors and proof
 forms; letter to Marvin Brill; forms; letter to Marvin Brill;
 talked with various creditors talked with various creditors
 5/20/76 Attend Creditor's Committee 5/20/76 Attend Creditor's Committee
 meeting; talked with Marvin meeting; talked with Marvin
 Brill; review balance sheet Brill; review balance sheet
 5/21/76 Talked with creditors re 5/21/76 Talked with creditors re
 meeting of Creditor's Committee meeting of Creditor's Committee
 5/25/76 Attend meeting of Creditor's 5/25/76 Attend meeting of Creditor's
 Committee Committee
 5/26/76 Attend continued meeting of 5/26/76 Attend continued meeting of
 Creditor's Committee; conference Creditor's Committee; conference
 with secured creditors with secured creditors
 5/27/76 Talked with Bradford 5/27/76 Conference with Marvin Brill,
 Gorham, Mr. Allen and Lloyd Esquire and Lloyd Rustigian
 Rustigan; talked with Marvin re: Clamex
 Brill re Clamex
 5/28/76 Talked with Marvin Brill; 5/28/76 Talked with Marvin Brill;
 talked with members of talked with members of
 Creditor's committee Creditor's committee
 6/1/76 Conference with counsel; attend 6/1/76 Conference with counsel; attend
 adjourned first meeting adjourned first meeting
 of Creditor's Committee of Creditor's Committee
 6/15/76 Talked with Marvin Brill re 6/15/76 Talked with Marvin Brill re
 Order; talked with Anthony Order; talked with Anthony
 Vacca Vacca
 6/24/76 Talked with Narragansett 6/24/76 Talked with Narragansett
 Electric and Marvin Brill; attend Electric and Marvin Brill; attend
 Creditor's Committee Creditor's Committee
 meeting; talked with Bankruptcy meeting; talked with Bankruptcy
 Court; talked with Court; talked with
 Brian Grimes Brian Grimes
 6/25/76 Talked with Bankruptcy 6/25/76 Talked with Bankruptcy
 Court; talked with Tom Rosenfield Court; talked with Norman
 and Marvin Brill; Orodenker and Marvin Brill;
 letter to all members of letter to all members of
 Creditor's Committee Creditor's Committee
 7/6/76 Talked with Al Factor re 7/6/76 Talked with Al Factor re
 stockholders stockholders
 7/8/76 Attend meeting of Creditor's 7/8/76 Attend meeting of Creditor's
 Committee; talked with Mr. Committee; talked with Mr.
 Grimes, Mr. Gershkoff and Grimes, Mr. Gershkoff and
 Mr. Wheelock Mr. Wheelock
 7/20/76 Talked with Marvin Brill 7/20/76 Talked with Marvin Brill
 7/22/76 Attend meeting of Creditor's 7/22/76 Attend meeting of Creditor's
 Committee; attend court Committee; attend court
 hearing; conference with hearing; conference with
 Marvin Brill; talked with Marvin Brill; talked with
 Narragansett Electric and Narragansett Electric and
 Marvin Brill Marvin Brill
 7/28/76 Talked with Lloyd Rustigian 7/28/76 Talked with Lloyd Rustigian
 8/10/76 Attend meeting of Creditor's 8/10/76 Attend meeting of Creditor's
 Committee at Bankruptcy Committee at Bankruptcy
 Court Court
*288
 8/16/76 Talked with Mr. Legare; conference 8/16/76 Talked with Mr. Legare; conference
 with Mr. Legare with Mr. Legare
 8/17/76 Talked with Mr. Legare and 8/17/76 Talked with Mr. Legare
 Marvin Brill
 8/19/76 Talked with Mr. Legare; conference 8/19/76 Talked with Mr. Legare; conference
 with Bankruptcy with Bankruptcy
 Judge; attend hearing Judge; attend hearing
 8/26/76 Sent copy of Greenwich Report 8/26/76 Review Greenwich Report;
 to all members of Creditor's talked with Marvin Brill and
 Committee; review same; Narragansett Electric; conference
 talked with Marvin Brill and with Mr. Legare and
 Narragansett Electric; conference Mr. Wehr; conference with
 with Mr. Legare and Judge; review Clamex Order;
 Mr. Wehr; conference with attend continued first meeting
 Judge; revise Clamex Order;
 attend continued first meeting
 9/9/76 Attend court hearing and 9/9/76 Attend court hearing and
 conferences conferences
 9/17/76 Talked with Marvin Brill and 9/17/76 Talked with Marvin Brill and
 Mr. Wehr Mr. Wehr
 9/23/76 Talked with Tom Rosenfield 9/23/76 Talked with Norm Orodenker
 9/27/76 Letter and Decree re Hobart 9/27/76 Letter and Decree re Hobart
 from Marvin Brill from Marvin Brill
 9/29/76 Talked with Tom Rosenfield 9/29/76 Talked with Norman
 Orodenker
 10/1/76 Talked with Tom Rosenfield 10/1/76 Talked with Norman
 and creditors; letter to all Orodenker and creditors; letter
 members of Creditor's Committee to all members of Creditor's
 Committee
 10/7/76 Attend meeting of Creditor's 10/7/76 Attend meeting of Creditor's
 Committee; talked with Marvin Committee; talked with Marvin
 Brill Brill
 10/15/76 Talked with Mr. Legare; 10/15/76 Talked with Mr. Legare;
 talked with bank representative; talked with bank representative;
 attend meeting with attend meeting with
 purchasers and Mr. Legare purchasers and Mr. Legare

In the application to employ co-counsel we are told that the retention of two attorneys was necessary because the "contemplated proceeding required substantial negotiation, conferences and documentation with proposed investors." Application to Employ Co-Counsel For Creditors' Committee, paragraph 4, dated May 6, 1976. It appears, at least in hindsight, that there was little that one attorney, much less two, needed to do or did do to protect or enhance the interests of creditors, and whatever litigation was necessary was handled exclusively by debtor's counsel, anyway. The activities of the applicants served mostly to keep themselves abreast of what Mr. Brill was doing, and we fail to see where the estate derived any benefit from the services rendered by either applicant.
As the people interested should be aware, we review every application in every case (regardless of size) carefully, and expect officers of this Court to do the same before causing applications to be filed. Boilerplate pleadings usually assist no one, and as evidenced here, may be quite counter-productive, considering counsel's representations that they contributed to "the consummation of a plan . . . bringing to the creditors and stockholders a far better return . . . than could otherwise be anticipated." In this case, no plan was ever confirmed, *289 creditors and shareholders received no return, and ultimately, after numerous continuances of the originally scheduled October 26, 1976 hearing, the case was converted on April 9, 1985 to one under Chapter 7, with creditors' claims in excess of $420,000 left unpaid. Accordingly, the applications for services in question are denied entirely. The request for costs in the amount of $103 is disallowed since it is unsupported and undocumented.