**In re U.S. JET, INC., Debtor.**

**Bankruptcy No. 89–02041–AT.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Jan. 11, 1991.

---

Gregory A. Darus, Alexandria, Va., for applicant.

H. Jason Gold, Gold & Stanley, P.C., Alexandria, Va., Counsel to Official Committee of Unsecured Creditors.

Robert O. Tyler, Alexandria, Va., for debtor.

Frank Bove, Office of the U.S. Trustee, Alexandria, Va.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

This matter comes before the court on the application of Thomas F. Pumpelly for payment of compensation. An evidentiary hearing was held on October 11, 1990. For reasons stated below, the application must be denied.

### Facts

The debtor, U.S. Jet, Inc., is an aviation corporation that is a debtor in possession in this voluntary chapter 11 case. In seeking to alleviate U.S. Jet's financial problems prior to filing bankruptcy, the company's stockholders and at least one creditor attempted to arrange a sale of the corporation. MBB Helicopter Corporation ("MBB"), a major unsecured creditor of U.S. Jet actively participated in negotiations for the sale. In August 1987 MBB solicited offers and received, among others, an offer from Corporate Jets, Inc., to acquire all of U.S. Jet's outstanding stock and securities as well as satisfy all of its outstanding debt.

On September 25, 1989, representatives from MBB and U.S. Jet met to discuss the offers received. David Stempler, a 20 percent shareholder and former U.S. Jet senior vice-president and general counsel, attended. Also present at the meeting were William McKenna, who with his wife were the majority shareholders of U.S. Jet, and Thomas Pumpelly, a management consultant. At this meeting, Pumpelly's recommendation was to reject the Corporate Jet offer; Pumpelly represented that an offer from Rocky Mountain Helicopters would be more beneficial to the shareholders. Although the Rocky Mountain offer would have paid only 30 to 35 cents on the dollar to creditors, it would have provided one million dollars to shareholders.

None of the purchase offers went through prepetition, and U.S. Jet filed its chapter 11 bankruptcy case in October 1989. After the case was filed, U.S. Jet set out to obtain financing and to sell the assets of the company. The debtor eventually sold its helicopter emergency medical service division to Corporate Jets. It appears that the entire initial payment went directly to Sovran Bank, a secured creditor that also held a second deed of trust on the McKenna's residence. Evidence received in various hearings before this court have revealed that Pumpelly played a major part in the negotiations that led to this sale to Corporate Jets.

Shortly after U.S. Jet filed its petition, debtor's counsel filed a motion to approve Pumpelly's employment as a professional in the role of management consultant for the debtor. Unfortunately, for reasons not disclosed to the court, an order approving Pumpelly's appointment was not presented to the court for entry until some time after Pumpelly had represented the debtor in the negotiations that led to the Corporate Jets sale. These are the services for which he now seeks compensation. Because of this delay and the position of the creditor's committee that Pumpelly had a conflict of interest that precluded his appointment, a hearing was held before the court on the debtor's request to enter the order of appointment nunc pro tunc.

Since the Pumpelly application had been timely submitted and evidence presented at the appointment hearing was inconclusive on the issue of his possible conflicts, the court approved the appointment; however, the court recognized but reserved decision

on questions of Pumpelly's disinterestedness and whether he was entitled to receive compensation from the estate.

On August 23, 1990, Pumpelly filed an application for compensation for his services rendered in negotiating the sale to Corporate Jets. The unsecured creditor's committee filed an objection to the application on the basis that Pumpelly represented the interests of the McKennas rather than the debtor and that because of this he is not a "disinterested person" within the meaning of 11 U.S.C. § 328(c).

Hearing was held on the objection to Pumpelly's application at which this court heard evidence and argument bearing on Pumpelly's activities. With respect to the previously mentioned meeting of September 25, 1989, in which purchase offers were considered, testimony was taken of Stempler, and MBB Helicopter's representative, both of whom had been present. Both of these witnesses stated that it was apparent to them that Pumpelly was representing the McKennas at the meeting. Pumpelly also testified; he denied representing the McKennas individually but admitted that it may have appeared so because of the closeness of the shareholder's interests to the corporation's interests. Mr. McKenna admitted at the hearing that he has had a professional relationship with Pumpelly for over ten years.

### Position of Creditor's Committee

At the compensation hearing the creditor's committee counsel argued that Pumpelly's activities before and after demonstrated that he acted on the behalf of the McKennas. In support of this position, the committee counsel pointed out that in the negotiations prior to the bankruptcy, Pumpelly held himself out as the McKennas' representative and defended their interests by urging the rejection of the original Corporate Jets offer. The committee also argued that the sale to Corporate Jets negotiated by Pumpelly was tailored around satisfying the Sovran debt, which was guaranteed by McKenna. Moreover, the original proposal as presented to this court included a provision that McKenna would receive one percent of the gross purchase price. This provision was deleted only after this court refused to approve the Corporate Jets sale with this payment provision.

### Discussion and Findings

Section 327(a) of the bankruptcy code permits the court to approve the trustee's employment of professional persons so long as they do not hold an interest adverse to the estate and are disinterested persons. Section 101(13)(A) defines "disinterested person" as one who "is not a creditor, an equity security holder, or an insider." Section 330(a)(1) provides for reasonable compensation to be awarded for actual and necessary services rendered by professional persons. Despite court approval of employment, however, § 328(c) provides that a court may deny allowance of compensation to an approved professional person if that person turns out not to be a disinterested person or represents or holds an interest adverse to the estate with respect to the matter on which the professional person was employed. Section 328(c) excepts from this rule persons who may qualify under § 327(c). Section 327(c) provides:

> a person is not disqualified for employment under this section [§ 327] solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict.

11 U.S.C. § 327(c).

This is another troublesome case where a professional person has rendered valuable services to a debtor but whose close ties to a nondebtor party in interest raise substantial conflict issues which in turn may prevent the professional receiving compensation from the bankruptcy estate.

It is apparent here that Pumpelly represented the McKennas both before and after the debtor filed for bankruptcy. Since the McKennas' residence secured debt owed by the debtor, this court further finds that Pumpelly represented an interest adverse to the estate and that this representation

constituted an actual conflict. While representation of both the debtor and its stockholder does not alone constitute an actual conflict, *see In re Global Marine, Inc.*, 108 B.R. 998 (Bankr.S.D.Tex.1987), *appeals dismissed,* 108 B.R. 1007, and 108 B.R. 1009 (S.D.Tex.1988), the McKennas' guarantee of Sovran's debt created a conflict. "Having to divide one's allegiance between two clients is what Section 327 attempts to prevent." *In re Roger J. Au & Son, Inc.,* 101 B.R. 502, 505 (Bankr.N.D.Ohio 1989). Pumpelly could not act completely in the estate's interest while at the same time protecting the McKennas' interests. *See In re BH & P, Inc.,* 103 B.R. 556 (Bankr.D. N.J.1989); *In re Hoffman,* 53 B.R. 564 (Bankr.W.D.Ark.1985). *But see In re Hurst Lincoln Mercury, Inc.,* 80 B.R. 894 (Bankr.S.D.Ohio 1987).

Consequently, this court denies Pumpelly's request for payment from the estate. Although the estate may have benefitted from Pumpelly's services in negotiating the sale and financing, he primarily represented the McKennas' interests and will not be permitted to look to the estate for payment.

The application for compensation of management consultant filed by Pumpelly will be denied. A separate order will be entered.