**In re Delores B. JOHNSON, David W. Johnson, Debtors.**

**Delores B. Johnson, David W. Johnson, Appellants,**

v.

**Richter, Miller & Finn, Appellee.**

**No. 1:04CV353.**

United States District Court,
E.D. Virginia,
Alexandria Division.

Aug. 10, 2004.

Richard G. Hall, Annandale, VA, for Appellants.

Paul Stone Richter, Richter, Miller & Finn, Washington, DC, for Appellee.

## MEMORANDUM OPINION

ELLIS, District Judge.

At issue in this bankruptcy appeal is whether a law firm that served as special counsel to the trustee of a bankrupt debtor's estate may be compensated for its services to the trustee from the debtor's estate when the law firm simultaneously represented one of the debtor's creditors. More specifically, the questions presented are:

(i) whether the bankruptcy court erred in awarding compensation to the appellee law firm for work the firm performed for the trustee even though the firm also simultaneously represented a creditor of the debtor on the ground that the firm's dual representation presented no actual conflict of interest; and

(ii) whether the bankruptcy court erred in ruling that the appellee law firm's amended application for compensation as counsel for the trustee included no request for compensation for work the firm performed for its creditor-client.

### I.

In December 1998, Helen M. Cunningham engaged the services of a sole-practitioner attorney, Robert Barth, to collect a debt owed to her by Delores and David Johnson. The Johnsons' debt to Cunningham was evidenced by a Note and secured by a Deed of Trust on property owned by the Johnsons at 1211 U Street N.W. ("U Street property") in the District of Columbia. Cunningham agreed in writing to pay Barth a contingency fee of thirty percent (30%) of any amount Barth collected on the Note. Thereafter, Barth retained the law firm of Richter, Miller & Finn ("RMF") to assist him in collection of the debt. Barth and RMF agreed orally to share the contingent fee on a *quantum meruit* basis.

Cunningham, by counsel RMF, initiated an action on January 22, 1999 against Delores and David Johnson in the United States District Court for the Eastern District of Virginia to collect the amount due on the Note ("Cunningham action"). After Delores Johnson filed a voluntary petition for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code in the bankruptcy court in this district on February 10, 1999, proceedings against Delores Johnson in the Cunningham action were automatically stayed pending disposition of Mrs. Johnson's bankruptcy case. *See* 11 U.S.C. § 362(a). Cunningham, by counsel RMF, filed a motion in the bankruptcy court on October 5, 1999, to obtain relief from the automatic stay of the proceedings in this district so that Cunningham could foreclose on the U Street property. The bankruptcy court granted Cunningham's motion. *See In re Johnson,* Case No. 99–10629 (Bankr.E.D.Va. Nov.18, 1999) (Order). Thereafter, Cunningham, by counsel RMF, initiated foreclosure proceedings on the U Street property and purchased the property at the foreclosure sale on January 12, 2000. Cunningham's efforts since then to sell the property have been unsuccessful.

On May 11, 1999, a default judgment entered against David Johnson in the Cunningham action in the amount of $757,173.12. *See Cunningham et al. v. Johnson et al.,* Case No. 1:99cv72 (E.D.Va.

May 11, 1999) (Default Judgment). Thereafter, Cunningham, by counsel RMF, pursued proceedings to collect the default judgment from David Johnson until those proceedings were also automatically stayed on January 17, 2001 when Mr. Johnson filed a voluntary petition for bankruptcy pursuant to Chapter 11. *See* 11 U.S.C. § 362(a).

On May 17, 1999, Cunningham, by counsel RMF, initiated an adversary proceeding in the bankruptcy court seeking to deny Delores Johnson's discharge pursuant to 11 U.S.C. § 727. This action succeeded and, on September 19, 2000, the bankruptcy court entered an order denying Delores Johnson's discharge. *See In re Johnson*, Case No. 99–10629 (Bankr. E.D.Va. Sept.19, 2000) (Order).

On April 16, 2001, the bankruptcy court converted David Johnson's Chapter 11 case to a Chapter 7 case and consolidated it with Delores Johnson's pending Chapter 7 case. *See In re Johnson*, Case No. 99–10629 (Bankr.E.D.Va. Apr.16, 2001) (Order). The bankruptcy court also concluded at that time that, even after the foreclosure sale of the U Street property, the Johnsons still owed Cunningham approximately $396,000, the difference between the $757,173.12 default judgment and the sale price of the U Street property at foreclosure.

In late 2000, shortly after the bankruptcy court denied Delores Johnson's discharge, Robert O. Tyler, the Trustee in Mrs. Johnson's bankruptcy case, sought to retain RMF to serve as special counsel to the Trustee in connection with the Trustee's efforts to recover property and assets of the estate. In the course of discussions with RMF regarding RMF's retention in this regard, RMF disclosed to the Trustee the nature and extent of the firm's representation of Cunningham. RMF also told the Trustee that the firm, in connection with its representation of Cunningham, had acquired substantial, non-confidential information relating to Delores Johnson's business affairs, including her assets and liabilities. Indeed, the Trustee sought to retain RMF not only because of RMF's expertise in bankruptcy law, but also because RMF had specific knowledge of the facts of the case. Prior to agreeing to serve as special counsel, RMF also informed Cunningham and her personal elder care attorney, Richard Snowdon, of the Trustee's request to retain the firm. Cunningham consented to the dual representation after obtaining the advice of Snowdon.

Thereafter, on February 16, 2001, the Trustee filed an application pursuant to Rule 2014, Fed. R. Bankr.P., to obtain the bankruptcy court's approval for the employment of RMF as special counsel.[1] The Trustee's Rule 2014 application appropriately disclosed that RMF also represented Cunningham in connection with the latter's efforts to collect a debt owed by the Johnsons. Four days later, on February 20, 2001, the bankruptcy court entered an order approving the Trustee's application and authorizing RMF's employment as

---

1. Rule 2014, Fed. R. Bankr.P., provides, in pertinent part, as follows:

An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327, § 1103, or § 1114 of the Code shall be made only on application of the trustee or committee.... The application shall state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

special counsel retroactive to January 1, 2001. *See In re Johnson,* Case No. 99–10629 (Bankr.E.D.Va. Feb.20, 2001) (Order). Between January 2001 and September 2002, RMF worked approximately 600 hours as special counsel to the Trustee collecting, as a result, over $1.8 million in assets on behalf of the bankrupt estate.[2]

On September 17, 2002, Edward Laios filed a proof of claim as an unsecured creditor to recover a debt owed to him by the Johnsons. The debt was evidenced by a Note and secured by a Deed of Trust on property owned by the Johnsons on Georgia Avenue in the District of Columbia ("Georgia Avenue property"). Laios was unable to enforce his security interest in the Georgia Avenue property because the District of Columbia had foreclosed on the property for failure of the debtors to pay real estate taxes. Before Laios filed his proof of claim, but after the property had been sold at the tax sale, the Trustee initiated an adversary proceeding in the bankruptcy court to attempt to recover the Georgia Avenue property for the benefit of the estate. The Trustee subsequently sought leave of court to abandon that proceeding for reasons not fully disclosed in the record and which, in any event, are immaterial to the resolution of this matter. On October 31, 2002, Cunningham, by counsel RMF, objected to Laios' proof of claim and sought to reduce Laios' unsecured claim by between $300,000 and $400,000, the estimated value of the property, on the ground that Laios unreasonably failed to take action to enforce his security interest in the property and thus should not be permitted to recover that amount as an unsecured creditor of the Johnsons. Although the Trustee had objected to the proof of claim on other grounds, he neither joined nor opposed Cunningham's objection. On April 2, 2003, the bankruptcy court entered an order disallowing the Laios claim in its entirety.[3] *See In re Johnson,* Case No. 99–10629 (Bankr.E.D.Va. April 2, 2003) (Order).

On September 25, 2003, RMF filed an Application for Compensation and Reimbursement pursuant to Rule 2016, Fed. R. Bankr.P., requesting total compensation of $209,834.47 for work performed as special counsel to the Trustee.[4] This amount included $190,046 for legal services provided, and $19,788.47 in expenses incurred, on behalf of both the Trustee and Cunningham. The bankruptcy court rejected the application on the ground that RMF was not entitled to recover from the estate for legal services provided to, and expenses incurred on behalf of, Cunningham. *See In re Johnson,* Case No. 99–10629 (Bankr. E.D.Va. Nov.5, 2003) (Order). Thereafter, on December 1, 2003, RMF filed an Amended Application for Compensation pursuant to Rule 2016, Fed. R. Bankr.P., which requested total compensation of $127,472.03. According to the Amended Application, this amount included no claim for fees or expenses incurred in connection with the firm's representation of Cunningham, but covered instead only $125,316 for legal services rendered to the Trustee and

---

**2.** When the assets of the estate were ultimately distributed, Cunningham received $158,000 from the estate in satisfaction of her $396,000 claim.

**3.** The current appeal record does not disclose the grounds for this disallowance, nor are those grounds material to the disposition of the issues at bar.

**4.** Rule 2016, Fed.R.Civ.P., provides, in pertinent part, as follows:

> An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested.

$2,156.03 in expenses incurred in connection with performing those legal services. On February 2, 2004, the bankruptcy court conducted a full evidentiary hearing on RMF's Amended Application. Delores Johnson and Laios objected to the Amended Application on the grounds (i) that RMF's representation of Cunningham and the Trustee presented a conflict of interest and (ii) that RMF's Amended Application requested compensation for duplicative services performed for Cunningham and the Trustee. The Trustee did not object to the Amended Application. On February 11, 2004, the bankruptcy court issued an order overruling all objections and granting RMF's Amended Application for compensation. *See In re Johnson,* Case No. 99–10629 (Bankr.E.D.Va. Feb.11, 2004) (Order). At issue here is the Johnsons' appeal from that order on the same grounds Delores Johnson initially asserted in opposition to the Amended Application, namely (i) that RMF's dual representation presented a disabling conflict of interest and (ii) that RMF's Amended Application requested compensation for duplicative services.

## II.

A district court's scope of review of a bankruptcy court's order is well-established. Whereas a bankruptcy court's findings of fact are reviewed only for clear error, its conclusions of law are subject to *de novo* review. *See In re Southeast Hotel Prop., L.P.,* 99 F.3d 151, 154 (4th Cir. 1996); *In re Johnson,* 960 F.2d 396, 399 (4th Cir.1992). Mixed questions of law and fact are also reviewed *de novo. See In re Litton,* 330 F.3d 636, 642 (4th Cir. 2003).

At issue here is (i) whether the bankruptcy court erred in approving RMF's Amended Application for compensation as special counsel to the Trustee given RMF's simultaneous representation of Cunningham and (ii) whether the bankruptcy court erred in ruling that RMF's Amended Application for compensation did not request dual compensation for work the firm had also performed for Cunningham. The conflict of interest issue is a mixed question of law and fact and thus is subject to *de novo* review. The dual compensation issue is a factual finding and thus is reviewed only for clear error.

## III.

Section 330(a) of the Bankruptcy Code governs the compensation of professional persons employed by the trustee, estate, or debtor-in-possession in a bankruptcy action. Specifically, it provides that:

> The [bankruptcy] court may award ... to a professional person employed under section 327 or 1103 of this title... reasonable compensation for actual, necessary services rendered by such... professional person, or attorney... and reimbursement for actual, necessary expenses.

11 U.S.C. § 330(a); *see also In re Federated Dept. Stores, Inc.,* 44 F.3d 1310, 1319–20 (6th Cir.1995) (stating that bankruptcy court has authority under § 330(a) to award fees and compensation to professional persons employed by debtor); *In re AOV Indus., Inc., et al.,* 797 F.2d 1004, 1008 (D.C.Cir.1986). As the terms of § 330 make clear, an attorney or other professional person employed by a trustee is not entitled to compensation under § 330(a) unless that individual or firm is validly employed under § 327. Section 327, in turn, under certain circumstances, prohibits the employment of a professional person operating under a conflict of inter-

est.[5] Thus, even where, as here, the professional's employment was previously approved by the bankruptcy court under § 327, § 330(a) mandates that, before awarding compensation, the bankruptcy court take a "second look" at the validity of the employment under § 327 before awarding compensation. *In re Delaney House, LLC*, 312 B.R. 1, 4–5 (citing *In re Engel*, 124 F.3d at 571). Indeed, "'[s]ection 327 approvals are merely preliminary

**5.** *See In re Big Rivers Elec. Corp.*, 355 F.3d 415, 435 (6th Cir.2004); *In re Federated Dept. Stores, Inc.*, 44 F.3d at 1320 (stating that § 330(a) "clearly requires a valid professional appointment under § 327(a) as a prerequisite to an award of compensation") (citing *In re EWC, Inc.*, 138 B.R. 276, 282–83 (Bankr. W.D.Okla.1992)); *In re AOV Indus., Inc., et al.*, 797 F.2d at 1008 (stating that a law firm's request for fees under § 330(a) may be denied upon "a finding that counsel had a conflict of interest in representing the estate"); *In re Unitcast, Inc.*, 214 B.R. 979, 988 (Bankr. N.D.Ohio 1997) ("[A] valid appointment under § 327 is a condition precedent for and [sic] award of compensation under § 330.") (citing *In re Federated Dept. Stores, Inc.*, 44 F.3d at 1320); *Textile Indus., Inc.*, 198 B.R. 902, 904–05 (Bankr.M.D.N.C.1996) (considering whether law firm was validly employed under § 327 in determining whether to award compensation under § 330(a)).

Notably, courts make clear that an order approving a professional's employment under § 327 does not guarantee that the professional will be compensated under § 330(a). *See In re Engel*, 124 F.3d 567, 571 (3d Cir.1997) ("Approval under § 327 establishes only that an attorney *may be employed* by the debtor-in-possession, and not that his employment will therefore or thereafter be compensated from estate funds.") (emphasis in original); *In re Delaney House, LLC*, 312 B.R. 1, 4–5 (Bankr. D.Mass.2004) (citing *In re Engel*, 124 F.3d at 571); *In re Brierwood Manor, Inc.*, 239 B.R. 709, 718 n. 12 (Bankr.D.N.J.1999) ("Even if Applicant had received prior court authorization to act as counsel to the former Debtor in possession or the Trustee, that would not guarantee allowance of its claim."); 3 *Collier on Bankruptcy* ¶ 327.03[2][c] (15th ed.) ("It should be noted that entry of an order approving the retention of a professional does

go aheads rather than conclusive determinations'" regarding compensation. *In re Engel*, 124 F.3d at 572 (quoting *In re Johns–Manville Corp.*, 32 B.R. 728, 731 (S.D.N.Y.1983)). Thus, the § 327 determination with respect to RMF must be revisited here.

 Section 327 governs bankruptcy court approval of a trustee's employment of attorneys and other professionals.[6]

not establish a right to be paid by the bankruptcy estate.").

At least one court has relied on the statutory language itself to support the principle that a bankruptcy court must not award compensation pursuant to its authority under § 330 to a professional who operates under a conflict of interest and thus would not pass muster under § 327. Specifically, the Sixth Circuit reasons that by directing the bankruptcy court to award only "reasonable compensation," § 330(a) makes clear that a fiduciary employed by the trustee must be free from any conflict of interest. *See In re Big Rivers Elec. Corp.*, 355 F.3d at 436 (citing *Wolf v. Weinstein*, 372 U.S. 633, 642, 83 S.Ct. 969, 10 L.Ed.2d 33 (1963)). Moreover, that Congress formulated a two-step process, namely (i) approval of appointment under § 327 and (ii) approval of compensation under § 330, also supports this principle.

**6.** The relevant sections of § 327 provide as follows:

(a) Except as otherwise provided in this section, the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

(c) In a case under chapter 7, 12, or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, unless there is objection by another creditor or the United States trustee, in which case the court shall disapprove such employment if there is an actual conflict of interest.

11 U.S.C. § 327(a) & (c); *see also In re Aro-Chem Corp.*, 176 F.3d 610, 616 (2d Cir.1999)

This provision is intended to ensure "that all professionals ... tender undivided loyalty and provide untainted advice and assistance in furtherance of their fiduciary responsibilities." *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir.1994). And while the provision accords the bankruptcy court broad discretion in approving the employment of professionals,[7] § 327(a) makes clear, as a general rule, that a trustee may employ, and the bankruptcy court may approve, the employment of an attorney or other professional person only if that individual or firm (i) does not hold or represent an interest adverse to the estate and (ii) is disinterested. 11 U.S.C. § 327(a); *In re Harold & Williams Dev't. Co.*, 977 F.2d at 909.[8] This is a stringent standard. Yet, § 327(c), which governs the employment of an attorney or professional who represents a creditor, creates a limited exception to this general rule.[9] Pursuant

---

(assessing whether bankruptcy court's approval of special counsel to the trustee was proper under § 327).

**7.** *See In re Harold & Williams Dev't. Co.*, 977 F.2d 906, 909 (4th Cir.1992) ("Although the Code vests in the bankruptcy trustee the immediate power to select candidates for employment by the bankruptcy estate, it gives broad discretion to the bankruptcy court over the appointment of professionals to work on behalf of the trustee and the estate, in part by empowering the court to approve candidates so selected.") (citing *In re Martin*, 817 F.2d 175, 182 (1st Cir.1987)).

**8.** The Bankruptcy Code defines a "disinterested person" as "a person that—(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, or connection with, or interest in, the debtor... or for any reason." 11 U.S.C. § 101(14). While the Code does not define the adverse interest prong on the § 327(a) two-pronged test, courts have stated that a professional "hold[s] or represent[s] an interest adverse to the estate" if he or she (1) "hold[s] or assert[s] any economic interest that would tend to reduce the value of the bankruptcy estate or that would give rise to an actual or potential dispute in which the estate is a rival claimant," or (2) "possess[es] a predisposition under circumstances that render such predisposition a bias against the estate." *In re Dev't Corp. of Plymouth, Inc.*, 283 B.R. 464, 469 (Bankr. E.D.Mich.2002) (citing *In re C.F. Holding Corp.*, 164 B.R. 799 (Bankr.D.Conn.1994) and *In re Roberts*, 46 B.R. 815 (Bankr.D.Utah 1985), *aff'd in relevant part and rev'd in part on other grounds*, 75 B.R. 402 (D.Utah 1987)); 3 *Collier on Bankruptcy* ¶ 327.04[2][b] (citing *In re American Printers & Lithographers, Inc.*, 148 B.R. 862, 864 (Bankr.N.D.Ill.1992) and *In re Envirodyne Indus., Inc.*, 150 B.R. 1008, 1016–17 (Bankr.N.D.Ill.1993)).

And while not directly relevant here, it is worth noting that some courts treat the two prongs of § 327(a) as a single inquiry while others treat them as distinct. *Compare In re Porter*, 52 B.R. 692, 696 (Bankr.E.D.Va.1985) ("Accordingly, the debtor's two grounds of disqualification in this case, *i.e.*, that Sheeran represents an interest adverse to the estate and Sheeran is not disinterested, are not entirely separate inquiries."); 3 *Collier on Bankruptcy* ¶ 327.04[2] ("Courts have recognized that there is an overlap in the two prongs of section 327(a)....") *with In re AroChem Corp.*, 176 F.3d at 629 (noting that the first prong of the test relates to professional's personal interests as well as the interests of the professional's clients whereas the second prong of the test refers only to professional's personal interests).

**9.** *See* H.R.Rep. No. 95–595 at 328, *reprinted in* 1978 U.S.C.C.A.N. (95 Stat.) 6284 ("Subsection (c) is an additional exception [to § 327(a)]. The trustee may employ as his counsel a non-disinterested person if the only reason that the attorney is not disinterested is because of his representation of an unsecured creditor."); *In re AroChem Corp.*, 176 F.3d at 624; *In re Crivello*, 134 F.3d 831, 835 (7th Cir.1998) (stating that "[t]he Code contains three limited exceptions to this general rule [§ 327(a)]" including § 327(c)); *In re Dunes Hotel Assoc.*, 1997 WL 33344280, at *7 (Bankr.D.S.C. Dec.15, 1997) ("Section 327(c) contains a limited exception to the general rule of § 327(a)."); 3 *Collier on Bankruptcy* ¶ 327.04[7][b] ("[S]ection 327(c) recognizes that it is not necessary that an attorney or

to that provision, an attorney who represents a creditor is validly employed by the trustee provided that there is no "actual conflict of interest" between the attorney's representation of the creditor and his representation of the trustee. *See* 11 U.S.C. § 327(c); *In re Interwest Bus. Equip., Inc.*, 23 F.3d 311, 316 (10th Cir.1994) ("[T]he bankruptcy judge can disqualify a professional *solely* on the basis of simultaneous representation, *if* it finds the joint representation creates an actual conflict.") (emphases in original). Thus, where a trustee employs a professional who represents a creditor, the stringent two-pronged test set forth in § 327(a) does not apply. *See supra* note 9. Put differently, a trustee may employ a creditor's attorney under § 327(c) provided the dual representation presents no actual conflict of interest. And, this is so even if there exists a potential conflict of interest or an appearance of a conflict of interest that would otherwise disqualify the attorney from employment under § 327(a).[10]

It is worth noting that some courts have disagreed on whether § 327(c) is an exception to the general rule set forth in § 327(a) or is instead an additional requirement that must be met when the trustee seeks to employ an attorney that represents a creditor.[11] While the Fourth Circuit has not addressed or resolved this issue, the statutory language and legislative history support the conclusion reached here, namely that § 327(c) is an exception to § 327(a). *See* H.R.Rep. No. 95–595 at 328, *reprinted in* 1978 U.S.C.C.A.N. (95 Stat.) 6284 ("Subsection (c) is an additional exception [to § 327(a) ].")). A focus solely on the statutory language supports this result because it is apparent that § 327(c) is a subset of the universe of situations described in § 327(a). Thus, an attorney who is disinterested and has no interest adverse to the estate *a fortiori* has no actual conflict of interest. By contrast, an attorney whose representation of both a creditor and the trustee presents no actual conflict of interest would seem nonetheless, as the creditor's attorney, to repre-

other professional person who has represented or who currently represents a creditor of the debtor automatically be deemed either adversely interested or not disinterested and, therefore, disqualified for employment by the trustee. In such cases, the exception in section 327(c) becomes operable....").

**10.** Notably, authority establishes that § 327(a), as opposed to § 327(c), is intended to broadly prohibit the employment of a professional person not only when there is an actual conflict, but also when there is a potential conflict or an appearance of a conflict. *See In re Rabex Amuru of North Carolina, Inc.*, 198 B.R. 892, 895–97 (Bankr.M.D.N.C.1996); *In re Garza*, 1994 WL 282570, at *2 (Bankr. E.D.Va. Jan.19, 1994); *In re WVS, Investment Joint Venture*, 1990 WL 191864, at *2 (D.Colo. Jan.4, 1990) ("Section 327[(a)] is intended to address the appearance of impropriety as much as its substance, to remove the temptation and opportunity to do less than duty demands. It is intended to prevent even the appearance of conflict, irrespective of the in-

tegrity of the person or firm under consideration.") (citations omitted); *but see In re Marvel Entm't Group, Inc.*, 140 F.3d 463, 476 (3d Cir.1998) (holding that while a court may disqualify a professional under 327(a) for a potential conflict of interest, "the court has no authority to disqualify a professional solely on the basis of an appearance of a conflict").

**11.** *Compare supra* note 4 *with In re Marvel Entm't Group, Inc.*, 140 F.3d at 476–77 (blurring distinction between § 327(a) and § 327(c)); *In re Interwest Bus. Equip., Inc.*, 23 F.3d at 316 ("The requirements of subsection (a) are threshold requirements to be met even if subsection (c) is implicated."); *In re Dev't Corp. of Plymouth, Inc.*, 283 B.R. at 468 (stating that § 327(c) " 'does not preempt the more basic requirements of subsection (a)' ") (quoting *In re Interwest*, 23 F.3d at 316); *In re Perkey*, 194 B.R. 846, 851 (Bankr.W.D.Mo. 1996) ("The attorney must meet the requirements of section 327(a) before consideration of the attorney's employment under section 327(c) comes into play.").

sent an interest adverse to the estate and may also not qualify as disinterested. So, it follows that by allowing a trustee to retain a creditor's attorney provided there is no actual conflict of interest, § 327(c) carves out an exception to the broad requirements of § 327(a) that is limited to creditor's attorneys. And, legislative history confirms that this is precisely what Congress intended to accomplish by enacting § 327(c).[12] Thus, Congress amended § 327(c) in 1984 to provide "greater flexibility to the trustee in hiring a professional person...." *In re Unitcast, Inc.*, 214 B.R. at 987 (citing S.Rep. No. 65, 98th Cong., 1st Sess. 75 (1983)).[13] Indeed, Congress had become concerned that it was becoming increasingly difficult in large bankruptcy actions for trustees to find and employ the services of a competent and experienced bankruptcy attorney who was not also representing a creditor. *See* 3 *Collier on Bankruptcy* ¶ 327.04[7][b]. Section 327(c) was intended to broaden the trustee's choices to include these attorneys provided there was no "actual conflict of interest."

 In this instance, appellants attack the bankruptcy court's decision approving RMF's Amended Application for compensation on the ground that RMF was operating under an actual conflict of interest because it was representing both the Trustee and Cunningham, a creditor. Thus, the task here is to determine whether there was in fact an actual conflict of interest. If so, RMF was not validly employed under § 327(c) and thus may not be compensated under § 330(a). If there was no actual conflict of interest, however, RMF was validly employed under § 327(c) and the bankruptcy court did not err in approving RMF's compensation on this ground.[14] Worth noting in this regard is

---

**12.** *See supra* note 8 and accompanying text.

**13.** Prior to the passage of the Bankruptcy Amendments and Federal Judgeship Act of 1984, § 327(c) *per se* disqualified the employment by the trustee of a professional that at the time of the bankruptcy action represented a creditor in connection with the bankruptcy action. It provided:

> In a case under chapter 7 or 11 of this title, a person is not disqualified for employment under this section solely because of such person's employment by or representation of a creditor, but may not, while employed by the trustee, represent, in connection with the case, a creditor.

See also 3 *Collier on Bankruptcy* ¶ 327.LH[7] ("Prior to the 1984 amendments, a person, while employed by the debtor or the trustee, could not represent a creditor in connection with the case irrespective of whether or not an actual conflict of interest existed.").

**14.** Because the validity of RMF's employment depends on whether there was an "actual conflict of interest" under § 327(c), and not whether RMF meets both prongs of the test set forth in § 327(a), it is not proper to assess whether compensation may be denied under § 328(c) which allows the bankruptcy court

to deny compensation to a professional (i) who is not disinterested or (ii) who "represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed," as that provision expressly exempts professionals who represent creditors and thus are employed under § 327(c). 11 U.S.C. § 328(c) ("Except as provided in section 327(c)... the court may deny allowance of compensation for services and reimbursement of expenses of a professional person employed under section 327 or 1103 of this title if, at any time during such professional person's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed."); *see also In re U.S. Jet, Inc.*, 127 B.R. 11, 13 (Bankr.E.D.Va.1991) ("Despite court approval of employment, however, § 328(c) provides that a court may deny allowance of compensation to an approved professional person if that person turns out not to be a disinterested person or represents or holds an interest adverse to the estate with respect to the matter on which the professional person was employed. Section 328(c) ex-

that the determination as to whether an actual conflict of interest existed in this case must be guided by federal bankruptcy law and not state law. State law, including state rules of professional conduct, although perhaps informative, are not determinative.[15]

■■■■ The term "actual conflict of interest" is not defined in the Bankruptcy Code. *See In re BH & P Inc.*, 949 F.2d 1300, 1315 (3d Cir.1991). Instead, the term "has been given meaning largely through a case-by-case evaluation of particular situations in the bankruptcy context." *Id.* In this regard, "[c]ourts have been accorded considerable latitude in using their judgment and discretion in determining whether an actual conflict exists 'in light of the particular facts of each case.'" *Id.* (citing *In re Star Broadcasting, Inc.*, 81 B.R. 835, 844 (Bankr.D.N.J.1988) and *In re Hoffman*, 53 B.R. 564, 566 (Bankr. W.D.Ark.1985)). Notably, courts have declined to set forth bright line rules as to when an alleged conflict warrants disqualification under § 327(c). *See In re BH & P, Inc.*, 949 F.2d at 1315. It is nonetheless

sensible to conclude that an alleged conflict of interest is "actual" and warrants disqualification under § 327(c) if there is "active competition between two interests, in which one interest can only be served at the expense of the other." *See In re BH & P, Inc.*, 103 B.R. 556, 563 (Bankr.D.N.J. 1989), *aff'd* 949 F.2d 1300 (3d Cir.1991).[16] Accordingly, where, as here, an attorney is employed by both the trustee and a creditor, there is no "actual conflict of interest" warranting disqualification unless (i) the interests of the trustee and the creditor are in fact directly conflicting[17] or (ii) the creditor is actually afforded a preference that is denied to other creditors.[18] A conflict "in which the competition is presently dormant, but may become active if certain contingencies occur," is merely potential and thus does not warrant disqualification. *See In re BH & P, Inc.*, 103 B.R. at 563.

■■■■ These principles, applied here, point persuasively to the conclusion that no actual conflict of interest existed here. Simply put, the interests of the Trustee and Cunningham did not conflict; they coincided; both were interested in enlarging the estate.[19] Thus, by seeking to en-

---

cepts from this rule persons who may qualify under § 327(c).").

15. Thus, appellants' reliance on the definition of "conflict of interest" set forth in *Wilson v. Allied Chemical Corp.*, 456 F.Supp. 249, 256 (E.D.Va.1978), a federal employment discrimination case, and Rule 1.7(a) of the Virginia Rules of Professional Conduct are not determinative here.

16. For example, in *In re Pillowtex, Inc.*, 304 F.3d 246, 252 (3d Cir.2002), the Third Circuit held that a law firm representing a debtor and a creditor had an actual conflict of interest where the law firm received a payment from the debtor of $250,000 for antecedent legal work less than ninety days before the bankruptcy filing and thus was in essence also a creditor. This was so because the law firm's interest as a creditor conflicted with the debtor's interest to reduce payments to its creditors. *See id.* In *In re AroChem Corp.*, 176

F.3d at 624, the Second Circuit held that no actual conflict of interest existed when a law firm represented both the debtor and a creditor on the ground that the firm represented the creditor in a separate, unrelated lawsuit. *See id.*

17. *See In re BH & P, Inc.*, 949 F.2d at 1316 (stating that a factor courts must consider in assessing a conflict of interest of a professional representing two estates in a bankruptcy action is "whether the interests of the related estates are parallel or conflicting").

18. *See In re Pillowtex, Inc.*, 304 F.3d at 252 ("The receipt of a preference by a creditor thus creates a conflict with unpaid creditors, whose share of the remaining assets is diminished by the payment.").

19. *See Stoumbos v. Kilimnik*, 988 F.2d 949, 964 (9th Cir.1993) (holding that the interests of the trustee and creditor "coincide[d]" be-

large the estate on behalf of the Trustee, RMF served both the interests of the Trustee and Cunningham.

Appellants nonetheless argue unpersuasively that an actual conflict of interest existed on three grounds: (i) RMF's award of compensation from the estate detracted from Cunningham's recovery as a creditor of the estate; (ii) RMF represented Cunningham on a contingency fee basis pursuant to RMF's oral agreement with Barth; and (iii) RMF failed to comply with Rule 1.7(a) of the Virginia Rules of Professional Conduct.[20] To begin with, the fact that RMF's compensation from the estate may detract from Cunningham's recovery does not compel the conclusion that there was an actual conflict of interest. Such a conclusion would disqualify all law firms representing creditors from employment by the trustee, thereby impermissibly rendering § 327(c) a dead letter. *See* 11 U.S.C. § 327(c) (stating that a professional is not disqualified from employment by the trustee because he represents a creditor unless there is an actual conflict of interest).[21] Moreover, such a conclusion

ignores that Cunningham's recovery would in any event be lessened by the compensation paid to *any* professional employed by the Trustee, even if that professional did not also represent her. Cunningham is not worse off because that compensation is provided to her own counsel. Nor is it sensible to conclude in this instance that the contingency fee arrangement gave rise to an actual conflict. Regardless of how RMF were to be paid, RMF would have sought to recover Cunningham's debt from the estate to the best of its ability. Finally, even assuming *arguendo* that RMF failed to comply with Rule 1.7(a) of the Virginia Rules of Professional Conduct, an assumption not supported by the record evidence, that assumption would not compel the conclusion that there was an actual conflict, as the conflicts determination must be governed by federal bankruptcy law, not state rules of professional conduct.[22]

▮▮▮ Although not argued by the parties, it is worth considering in somewhat greater detail whether RMF's representation of Cunningham with regard spe-

---

cause "if money is recovered for the estate, [the creditor's] pro rata recovery will ultimately be greater" such that there was no actual conflict of interest).

**20.** Rule 1.7(a) of the Virginia Rules of Professional Conduct governs conflicts of interest and provides as follows:

(a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another existing client, unless:
(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
(2) each client consents after consultation.

**21.** *See also Commodity Futures Trading Comm'n v. Baragosh,* 278 F.3d 319, 327 (4th Cir.2002) ("Such an interpretation would be directly at odds with a cardinal rule of statu-

tory construction—'that a statute should be interpreted so as not to render one part inoperative.' ") (quoting *Mountain States Tel. & Tel. v. Pueblo of Santa Ana,* 472 U.S. 237, 249, 105 S.Ct. 2587, 86 L.Ed.2d 168 (1985)).

**22.** *See Koffman v. Osteoimplant Tech.,* 182 B.R. 115, 125 (D.Md.1995) (holding that state tort suits are preempted by federal bankruptcy law on the ground that "[a]llowing state tort actions based on allegedly bad faith bankruptcy fillings [sic] or violation of the automatic stay to go forward ultimately would have the effect of permitting state law standards to modify the incentive structure of the Bankruptcy Code and its remedial scheme") (citing *Gonzales v. Parks,* 830 F.2d 1033, 1036 (9th Cir.1987)); *In re Tate,* 253 B.R. 653, 671 (Bankr.W.D.N.C.2000) ("[T]he Plaintiffs' state claims are preempted in this particular context, because they stand as obstacles to the accomplishment of the full purposes and objectives of federal bankruptcy law.").

cifically to her objection to Laios' proof of claim concerning the Georgia Avenue property presented an actual conflict of interest. While RMF's representation of Cunningham in objecting to the proof of claim was undoubtedly contrary to the interests of Laios, another creditor, it does not follow, in the instant circumstances, that RMF's dual representation of Cunningham and the Trustee gave rise to an actual conflict of interest. This is so for various reasons, including (i) that the existing record does not indicate that this representation gave rise to any actual conflict of interest, (ii) that the Trustee, on behalf of all creditors, did not oppose Cunningham's objection to Laios' proof of claim on this basis, and indeed joined in objecting to the claim albeit on different grounds, and (iii) that neither Laios nor appellants raised this issue in objecting to the Amended Application or the bankruptcy court's award of compensation. Moreover, it is important to consider that a trustee, as representative of all of the creditors of the estate, necessarily must balance the interests of all the creditors for the benefit of the estate as a whole, and thus must in many instances subordinate one creditor's claim to another's. *See* 3 *Collier on Bankruptcy* ¶ 323.02[1] (stating that the trustee "is the sole representative of the estate, [and] represents all the creditors of the estate generally. . . ."). To conclude that an actual conflict arises when an attorney simultaneously representing a creditor and a trustee seeks, on behalf of the creditor, to subordinate the claim of another creditor, compels the conclusion, contrary to § 327(c), that an attorney could never simultaneously represent a creditor and a trustee, as bankruptcy cases not infrequently require a trustee to act against the interests of some creditors for the benefit of the estate as a whole. *See id.* For these reasons, therefore, RMF's representation of Cunningham and the Trustee did not present or create an actual conflict of interest and the bankruptcy court accordingly did not err in concluding that RMF, as Trustee's special counsel, met the requirements of §§ 327(c) and 330(a) and was thus entitled to compensation.[23]

23. While the analysis of this issue ends here, it is nonetheless also worth considering whether, in the event it were determined that there was an actual conflict of interest, it would be equitable to deny RMF compensation when, as occurred here, (i) RMF disclosed the nature of the conflict to the Trustee and Cunningham prior to the Trustee's application for RMF's employment, (ii) RMF's employment was approved by the bankruptcy court under § 327, (iii) the nature of RMF's representation of Cunningham did not change after RMF's employment was approved, and (iv) RMF performed approximately 600 hours of work on behalf of the Trustee for which it cannot obtain compensation from any other source. Had RMF (i) initially failed to disclose the nature of the conflict or (ii) subsequently failed to disclose a change in the nature of its representation of Cunningham that gave rise to a conflict after its employment was approved, denial of compensation would not raise equitable concerns. Yet, while courts have certainly expressed concern that denying compensation in full when a professional's employment was approved under § 327 may be unjust or inequitable in certain circumstances, it is sensible to conclude that denial of compensation is only unjust if reliance on the bankruptcy court's prior approval was reasonable. *See In re Federated Dept. Stores, Inc.*, 44 F.3d at 1320 (relying on fairness and equity to grant limited compensation to professional whose employment was not valid under § 327); *Rome*, 19 F.3d at 63 n. 7 (citing cases that support the principle that equities may warrant lesser sanction even when general rule favoring total denial of compensation applies); *see also In re Engel*, 124 F.3d at 582 ("However, I cannot join the majority because I believe the bankruptcy court improperly denied Hantman all compensation under 11 U.S.C. § 330(a) without any consideration of the extent to which Hantman reasonably relied upon the initial determination under 11 U.S.C. § 327(e) that

## IV.

 As set forth above, § 330 of the Bankruptcy Code allows a bankruptcy court to award a professional person performing services for the trustee "reasonable compensation" for those services. 11 U.S.C. § 330(a)(1). The statute itself and authority interpreting this provision makes clear that courts must not award compensation for duplicative services. *See* 11 U.S.C. § 330(a)(4)(A)(i) ("[T]he court shall not allow compensation for unnecessary duplication of services . . . .").[24] This prohibition against "double compensation" includes compensation for services that are duplicative (i) because they were performed by the same individual for two different clients and then billed to both clients and (ii) because they were performed by two different individuals for the same client and billed more than once. In this instance, the bankruptcy court, after an evidentiary hearing, concluded that RMF's Amended Application for compensation did not include duplicative services and thus awarded the requested compensation. Because this determination is a factual finding, the task here is to determine whether it is clearly erroneous. *See In re Southeast Hotel Prop., L.P.,* 99 F.3d at 154 (stating that the bankruptcy court's factual findings are reviewed for clear error); *In re Johnson,* 960 F.2d at 399 (same).

 A review of the bankruptcy court record makes clear that the bankruptcy court did not err in concluding that RMF's Amended Application requested compensation for substantially identical services either (i) performed by an RMF attorney for both Cunningham and the Trustee or (ii) performed by more than one RMF attorney for the Trustee. Richter's testimony at the bankruptcy court hearing made clear that RMF's Amended Application did not include duplicative services. That RMF's Amended Application, which ostensibly included only services performed on behalf of the Trustee, requested substantially less compensation than the initial application, which clearly included services performed for both Cunningham and the Trustee, supports Richter's testimony that

his services were indeed in the best interests of the estate.") (McKee, J., dissenting). Reliance in the face of an actual conflict is undoubtedly unreasonable. Accordingly, even if RMF's representation of Cunningham gave rise to an actual conflict of interest, it would not be unjust or inequitable to deny compensation. Simply put, an attorney or other professional person that elects to represent both a trustee and a creditor in a bankruptcy action accepts the risk that a court will later find that that dual representation gave rise to an actual conflict of interest such that the professional is not entitled to compensation under § 330.

24. *See also In re Smith,* 305 F.3d 1078, 1086 (9th Cir.2002) ("Under [§ 330(a)(4)(A)], a bankruptcy court cannot award fees if the services rendered were unnecessarily duplicative."); *In re AOV Indus., Inc.,* 797 F.2d at 1008 ("The requested fees [under § 330] may be reduced or eliminated on a number of grounds, including a finding that the debtor was billed for unnecessary or duplicative services."); *In re Delta Petroleum, Ltd.,* 193 B.R. 99, 108 (D.P.R.1996) ("Thus, by negative implication, a bankruptcy judge may award compensation for services that were: reasonably likely to benefit the estate, necessary to its administration, or not unnecessarily duplicative."); *In re Heck's Props., Inc.,* 151 B.R. 739, 751 (S.D.W.V.1992) (denying fees on law firm's application for compensation under § 330 on the ground that $4,140 of charges by law firm partner were "duplicative and unnecessary"); *In re Yankee Seafood Corp.,* 53 B.R. 285, 286 (Bankr.D.R.I.1985) ("In this case, we are compelled to point out that courts may not allow double compensation for the same services, where attorneys are acting jointly in the same capacity, and that it is the court's responsibility to refuse compensation for excessive, unnecessary, or duplicative hours.").

the services performed for the Trustee set forth in the Amended Application were not duplicative of services performed for Cunningham.[25] Nor does it appear that the bankruptcy court erred in concluding that the Amended Application did not mistakenly include duplicative hours as Richter testified that RMF carefully maintained separate time and billing records (i) for work performed for Cunningham and the Trustee and (ii) for each of its attorneys. That RMF's records indicate that two attorneys worked simultaneously in representing the Trustee does not compel a different conclusion in this regard as it is reasonable given the complexity of this bankruptcy action that the representation would require the services of more than one attorney and that these attorneys would need to engage in ongoing inter-office conferences.[26] Accordingly, for these reasons, the bankruptcy court's determination that the Amended Application did not include charges for duplicative services was not clearly erroneous.[27]

## V.

For the reasons set forth herein, appellants' appeal must be denied and the bankruptcy court's order approving RMF's Amended Application for compensation and awarding compensation for legal services rendered to the Trustee in the amount of $125,316 and reimbursement of

---

25. The initial application for compensation requested $209,834.47 for services provided and expenses incurred in representing the Trustee and Cunningham between June 19, 2000, before RMF was retained by the Trustee, and September 26, 2002. The application indicated that RMF sought compensation for services provided on nine distinct projects, including five projects that the application makes clear RMF performed solely for Cunningham. The Amended Application for compensation, however, requested $127,472.03 for services provided and expenses incurred in representing the Trustee between January 1, 2001, the date RMF's representation of the Trustee was approved, and September 26, 2002. It indicated that RMF sought compensation for services provided on only three distinct projects performed on behalf of the Trustee.

26. *Compare In re The Bennett Funding Group, Inc.*, 213 B.R. 234, 245 (Bankr.N.D.N.Y.1997) ("It is ... an accepted principle that generally no more than one attorney may bill for time spent in intra-office conferences or meetings absent an adequate explanation."); *In re Yankee Seafood Corp.*, 53 B.R. at 288 (disallowing compensation in part on the ground that "[i]t appears, at least in hindsight, that there was little that one attorney, much less two, needed to do or did do to protect or enhance the interests of creditors, and whatever litigation was necessary was handled exclusively by debtor's counsel, anyway").

27. Not raised by appellants is whether RMF may recover compensation, in full or in part, for any hours spent preparing the initial application for compensation. Nor does it appear from the Amended Application that RMF in fact sought recovery for those hours. Although this issue need not be resolved here, it seems clear that RMF should be awarded compensation for hours spent preparing the initial application's request for compensation for legal services rendered to the Trustee, to the extent that this work did not have to be repeated for the Amended Application. *See* 11 U.S.C. § 330(a)(6) ("Any compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application."); *In re Computer Learning Centers, Inc.*, 285 B.R. 191, 219 (Bankr.E.D.Va.2002) (stating that a professional may be compensated for fees in connection with a fee application under 11 U.S.C. § 330(a)(6), but that "[t]his does not mean that every aspect of preparing a fee application is compensable") (citing *In re CF & I Fabricators of Utah, Inc.*, 131 B.R. 474, 483–88 (Bankr.D.Utah 1991)); *In re On Tour, LLC*, 276 B.R. 407, 418 (Bankr.D.Md. 2002) ("This Court has taken the majority position set out in cases such as *In re Nucorp Energy, Inc.*, 764 F.2d 655, 662 (9th Cir. 1985), that bankruptcy counsel should be compensated for preparing and defending fee applications.").

expenses in the amount of $2,156.03 must be affirmed.

An appropriate order will issue.